AUTOMATED COMMUNICATION SYSTEMS, INC., d/b/a ACSI, Plaintiff,

v.

The UNITED STATES, Defendant,

and

J. Allen Tharp, Intervenor.

No. 01–65C.

United States Court of Federal Claims.

June 22, 2001.[*]

[*] OPINION ORIGINALLY FILED UNDER SEAL ON JUNE 18, 2001

James F. Nagle, Seattle, WA, for plaintiff.

Lee J. Freedman, U.S. Department of Justice, Washington, DC, with whom were Stuart E. Schiffer, Acting Assistant Attorney General and Director David M. Cohen, for defendant, Kerri Cox and Maurice A. Deaver, Department of the Air Force, of counsel.

Robert Humphreys, Washington, DC, for intervenor.

## OPINION

FIRESTONE, Judge.

This pre-award bid protest concerns request for proposal ("RFP") F41636–00–R–0150, offered by the Department of Defense ("DoD") to obtain full food services at Lackland Air Force Base ("Lackland AFB"), Medina Annex, Kelly Annex, and Camp Bullis, all in Texas. Plaintiff Automated Communication Systems, Inc. ("ACSI") plans to enter into a teaming agreement with a small business entity to submit a proposal pursuant to this solicitation, but challenges the validity of the selection process that will be used by the Air Force. ACSI contends that the Air

Force's proposed selection procedure is unlawful.

This action comes before the court on ACSI's motions for a temporary restraining order, summary judgment, and preliminary and permanent injunction, and the government's motion to dismiss and for summary judgment. ACSI challenges the Air Force's application of and adherence to the mandatory award preference to blind vendors provided by the Randolph–Sheppard Vending Stand Act ("RSA" or "the Act"), 20 U.S.C. §§ 107–107f (1994 & WESTLAW through 2000 legislation), and implemented through DoD Directive 1125.3 ("DoDD 1125.3"), April 7, 1978. ACSI contends that the Air Force has failed to properly apply preferences provided under other procurement-oriented statutes such as those favoring businesses located in historically underutilized business zones ("HUBZones").

The government seeks to dismiss certain of ACSI's claims—those challenging the validity of the preference provided by the RSA and DoDD 1125.3—on the grounds that such claims exceed the jurisdictional authority of this court. The government further requests summary judgment regarding ACSI's challenges to the bid procurement process. The government argues that the RFP and the government's procurement decisions are in conformance with all applicable laws and the Federal Acquisition Regulation ("FAR").

For the reasons that follow, the court **GRANTS** the government's motion to dismiss ACSI's complaint in part, and **GRANTS** the government's motion for summary judgment regarding the remainder of ACSI's complaint. Accordingly, ACSI's request for preliminary and permanent injunction is **DENIED.**

## FACTS

### I. The Lackland AFB Solicitation

The solicitation at issue in this case, RFP F41636–00–R–0150, is a solicitation for a firm fixed-price contract to provide full food services at Lackland AFB, Medina Annex, Kelly Annex, and Camp Bullis, Texas. Performance of the resulting contract is scheduled to begin on October 1, 2001. The incumbent contractor is the Texas Commission for the Blind ("TCB"),[1] in conjunction with its contract manager, intervenor J. Allen Tharp, who is a blind vendor.

On March 28, 2000, the Air Force posted a synopsis of the Lackland AFB RFP on the Federal Business Opportunities website, www.fedbizopps.gov, and the Electronic Posting System, www.eps.gov. The synopsis contained the following description of the solicitation:

> Nonpersonal services to provide all personnel, supervision, and any items necessary to perform full food service for approximately 15 dining facilities located at Lackland AFB, Medina Annex, Kelly Annex, and Camp Bullis, Texas all in strict accordance with Statement of Work. Period of performance is 01 October 2000 through 30 September 2001 with four option periods of one year. A firm fixed price requirement contract is contemplated. NOTE: IN ACCORDANCE WITH DEPARTMENT OF DEFENSE DIRECTIVE 1125.3 AND AFI [Air Force Instruction] 34–206 VENDING FACILITY PROGRAM FOR THE BLIND ON AIR FORCE PROPERTY WHICH IMPLEMENTS THE RANDOLPH SHEPPARD ACT IF STATE LICENSING AGENCY (SLA) SUBMITS A PROPOSAL THAT'S WITHIN THE COMPETITIVE RANGE ESTABLISHED BY THE CONTRACTING OFFICER, NEGOTIATIONS ARE TO BE ACCOMPLISH[ED] DIRECTLY WITH SLA. . . .

As set forth in the synopsis, the Lackland AFB procurement would accommodate the preference for blind vendors established under the Randolph–Sheppard Act, which states:

> (a) Authorization—For the purposes of providing blind persons with remunerative employment, enlarging the economic opportunities of the blind, and stimulating the blind to greater efforts in striving to make themselves self-supporting, blind persons licensed under the provisions of

1. The TCB is the incumbent RSA state licensing agent, or "SLA."

this chapter shall be authorized to operate vending facilities on any Federal property.

(b) Preferences regulations; justification for limitation on operation—In authorizing the operation of vending facilities on Federal property, *priority shall be given to blind persons licensed by a State agency as provided in this chapter;* and the Secretary [of Education], through the Commissioner [of the Rehabilitation Services Administration], shall, after consultation with the Administrator of General Services and other heads of departments, agencies, or instrumentalities of the United States in control of the maintenance, operation, and protection of Federal property, prescribe regulations designed to *assure* that—

(1) the *priority* under this subsection is given to such licensed blind persons (including assignment of vending machine income pursuant to section 107d–3 of this title to achieve and protect such priority), and (2) wherever feasible, one or more vending facilities are established on all Federal property to the extent that any such facility or facilities would not adversely affect the interests of the United States.

20 U.S.C. § 107 (emphasis added).[2]

The Air Force also stated that the procurement would be conducted in accordance with the requirements of DoD Directive 1125.3 which implements the RSA and provides in section E2.1.3.1.2. as follows: "If the State licensing agency submits a proposal and it is within the competitive range established by the contracting officer, *the contract will be awarded to the State licensing agency . . . .* " (Emphasis added.)

Following the March notice, the Air Force posted the final solicitation on November 29, 2000, which listed January 2, 2001, as the last date for submission of proposals. The solici-

tation reiterated the references to the RSA and DoDD 1125.3 by stating that:

The Government will award a contract resulting from this solicitation to the responsible offeror whose offer conforming to the solicitation will be most advantageous to the Government, price and other factors considered.

Note 1: If discussions are to be conducted, the Contracting Officer shall establish a competitive rage comprised of all the most highly rated proposals based on the ratings of each proposal against all evaluation criteria, unless the range is further reduced for purposes of efficiency.

Note 2: In accordance with Department of Defense Directive 1125.3 and AFI 34–206 . . . which implement[ ] the Randolph Sheppard Act, if the State Licensing Agency (SLA) submits a proposal that is within the competitive range established by the Contracting Officer, negotiations are to be accomplish[ed] directly (solely) with the SLA.

The Air Force posted a minor modification to the solicitation, Modification 2, on December 1, 2000, which added a site visit scheduled for December 12, 2000. On December 7, 2000—following a bid protest at the General Accounting Office ("GAO") complaining that the time provided for the submission of proposals was inadequate—the Air Force posted Modification 3, which extended the date for receipt of proposals to February 6, 2001, and rescheduled the site visit for January 4, 2001. The protest was then withdrawn. The Air Force posted two subsequent minor modifications to the solicitation, Modifications 4 and 5, on January 19 and 29, 2001, respectively.

Following the January 4, 2001 site visit, the Air Force informed interested vendors that it would entertain written questions concerning the solicitation until the close of busi-

---

**2.** The RSA was amended in 1974. The Senate Report accompanying the bill that was enacted stated:

The insertion of the term "priority" underscores the Committee's expectation that where a vending facility is established on Federal property, it is the obligation of the agency in control of such property, the Secretary of HEW, and the State licensing agency, to assure

that one or more blind vendors have a *prior right* to do business on such property, and furthermore that, to the extent that a minority business enterprise or non-blind operated vending machine competes with or otherwise economically injures a blind vendor, every effort must be made to eliminate such competition or injury.

S.Rep. No. 93–937, 93d Cong., 2d Sess., at 15.

ness on January 9, 2001. The Air Force received approximately 140 questions, and it released those questions along with answers on January 23, 2001.

On January 31, 2001, another bid protest was filed with the GAO. That same day, in response to the protest, the Air Force posted Amendment 1 to the Solicitation, deemed Modification 6. This amendment indefinitely extended the date for receipt of proposals and rescinded the answers to vendor questions that the Air Force had posted on January 23, 2001. The amendment also advised vendors that additional questions would be entertained until February 7, 2001, after which the Air Force would post revised answers. Amendment 1 also informed vendors that a future amendment would establish a new closing date for proposals and clarify Modifications 1 through 5. On May 25, 2001, the Air Force announced the new closing date of July 2, 2001.

## II. Procedural Posture

On February 2, 2001, ACSI filed this bid protest action. ACSI contends that it qualifies for preferential treatment in government contracting as a HUBZone small business interest under the Historically Underutilized Business Zone Act of 1997 ("HUBZone Act"), 15 U.S.C. § 632(p) (1994 & Supp.2000). ACSI states in its complaint that the Air Force has, in effect, eliminated the disadvantaged business preference for which it qualifies by applying the preference for blind vendors contained in the RSA and the DoDD 1125.3 without limitation. In addition to this core challenge, ACSI also raised several other objections to the solicitation in its complaint. However, ACSI abandoned those claims at the oral argument on the parties' motions for summary judgment.[3]

On April 4, 2001, the government filed a motion to dismiss portions of ACSI's complaint, and for summary judgment as to the remaining counts. On April 5, 2001, the court granted J. Allen Tharp's, the incumbent blind contract manager's, motion to intervene. And on April 30, 2001, the court granted leave for the State of Texas, *ex rel.*, Texas Commission for the Blind to participate in this matter as *amicus curiae*, and denied *amicus curiae* status to NISH (formerly the National Industries for the Severely Handicapped, Inc.). On June 4, 2001, ACSI renewed its motion for a preliminary injunction to stay the bid opening date based on the Air Force's representations that it intended to require that all bids be filed by July 2, 2001. Oral argument was held on June 15, 2001.

## DISCUSSION

### I. Standard of Review

There are essentially two components to ACSI's complaint: a challenge to the continued validity of the preference for the blind implemented by the government through DoDD 1125.3, and a challenge to the Lackland AFB solicitation itself. As a result, the government has requested that the court dismiss certain counts of ACSI's suit for lack of jurisdiction, and has requested summary judgment on the administrative record as to the remaining counts.

The standards to apply are well settled. The standard of review for a motion to dismiss for lack of jurisdiction over the subject matter under Rule 12(b)(1) of the Rules of the Court of Federal Claims provides that a complaint will not be dismissed on this ground "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Emery Worldwide Airlines, Inc. v. United States,* 49 Fed.Cl. 211, 219 (2001) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (footnote omitted)). "The burden of proving that the Court of Federal Claims has subject matter jurisdiction over a matter rests on the party seeking to invoke its jurisdiction." *Id.* (citing

---

**3.** For example, ACSI also claimed in its complaint that it was entitled to the small disadvantaged business preference provided under FAR subpart 19.11 and FAR 52.219–23, by which all offers, except those from certain disadvantaged business groups, are evaluated by adding an extra price factor of a percentage determined by the Secretary of Commerce. At oral argument, ACSI conceded that those FAR provisions were rightfully excluded from the Lackland AFB solicitation, and ACSI therefore waived this aspect of its challenge.

*Alder Terrace, Inc. v. United States,* 161 F.3d 1372, 1377 (Fed.Cir.1998)). In this connection, "the [court] is obligated to assume all factual allegations to be true and to draw all reasonable inferences in plaintiff's favor." *Henke v. United States,* 60 F.3d 795, 797 (Fed.Cir.1995) (citing *Scheuer v. Rhodes,* 416 U.S. 232, 236–37, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Catawba Indian Tribe of S.C. v. United States,* 982 F.2d 1564, 1568–69 (Fed. Cir.1993)).

Under the terms of the Administrative Dispute Resolution Act of 1996 ("ADRA"), Pub.L. No. 104–320, § 12, 110 Stat. 3870, 3874–75 (1996) (amending 28 U.S.C. § 1491 (1994 & Supp.2000)), review of procurement actions is to be based on the administrative record and the agency's decision must be affirmed unless the plaintiff can present record evidence suggesting that the decision of the contracting officer is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 28 U.S.C. § 1491(b)(4); 5 U.S.C. § 706(2)(A) (1994); *Impresa Construzioni Geom. Domenico Garufi v. United States,* 238 F.3d 1324, 1338 (Fed.Cir.2001); *Miller–Holzwarth, Inc. v. United States,* 42 Fed.Cl. 643, 649 (1999).

It is against this backdrop that the court will review ACSI's challenges regarding various aspects of the Air Force's procurement process for the Lackland AFB contract.

## II. This Court Does Not Possess Jurisdiction to Consider the Continued Validity of the Randolph–Sheppard Act or DoD Directive 1125.3

■ The government has moved to dismiss portions of ACSI's complaint on the grounds that ACSI is directly challenging the validity of the RSA and DoDD 1125.3. The government argues that ACSI's challenge to the validity of the statutes and regulations governing Air Force procurements may be heard only by federal district courts under their federal question and declaratory judgment authorities.

ACSI argues that this court may hear ACSI's challenge to the validity of DoDD 1125.3 and the continuing viability of the RSA itself as part of this court's jurisdiction under the ADRA. In addition, ACSI contends that because ADRA § 12(b) ended the district courts' jurisdiction to hear bid protest cases as of January 1, 2001, if this court does not entertain ACSI's challenge, ACSI will be left without any forum to hear its regulatory and statutory challenge claims.

The court agrees with the government. To the extent that ACSI is challenging the validity of DoDD 1125.3 and the continued applicability of the RSA, these claims must be dismissed based on the reasoning set forth by the Federal Circuit in *Southfork Systems, Inc. v. United States,* 141 F.3d 1124 (Fed.Cir.1998). In *Southfork,* a suit which involved many of the same issues now before this court,[4] the Federal Circuit held:

> Southfork's real complaint was that the Department of Education and [DoD] had acted arbitrarily in promulgating the regulations that the Air Force followed in conducting the Lackland procurement. If a bidder wishes to challenge the validity of a regulation governing a procurement, the proper method of doing so is to bring an action in federal district court under the Administrative Procedure Act, 5 U.S.C. § 702.

*Id.* at 1135 (citing *Scheduled Airlines Traffic Offices, Inc. v. Dept. of Defense,* 87 F.3d 1356 (D.C.Cir.1996); *GBA Assocs. v. General Servs. Admin.,* 32 F.3d 898 (4th Cir.1994); *Dynalantic Corp. v. U.S. Dept. of Defense,* 937 F.Supp. 1 (D.D.C.1996)). The Circuit determined that the Court of Federal Claims did not have the authority to hear such challenges under its pre-ADRA bid protest jurisdiction.

The fact that *Southfork* was decided under the predecessor statute to the ADRA does not alter this result. The ADRA vests exclusive jurisdiction in the Court of Federal Claims over actions challenging the government's compliance with its procurement

---

**4.** In *Southfork,* the plaintiff was the incumbent contractor on the verge of losing the Lackland AFB contract to the TCB at the time it filed its bid protest. The plaintiff contested "both the

[TCB's] status as an offeror and the contracting officer's decision to give preferential treatment to the [TCB] under the RSA." *Southfork,* 141 F.3d at 1129–30.

regulations, *not* over actions regarding the *validity* of those regulations. The ADRA directs this court to "render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1).

It is this court's view that under the ADRA, the Court of Federal Claims is authorized to execute the same jurisdiction as the district courts did under *Scanwell* jurisdiction.[5] *Scanwell* jurisdiction in the district courts allowed those courts to review the validity of procurement decisions. *See Southfork*, 141 F.3d at 1135. *Scanwell* jurisdiction did not extend to review of the validity of the underlying regulations themselves. Although the ADRA has now removed from the district courts the jurisdiction to hear bid protest cases, there is nothing in the ADRA that takes away the residual authority of the federal district courts to hear challenges to the validity of regulations or statutes. Thus, to the extent ACSI seeks a determination regarding the validity of the RSA and DoDD 1125.3, those claims must be dismissed by this court for want of jurisdiction.

### III. The Lackland AFB RFP Was Issued in Accordance with All Applicable Preference Requirements

#### A. This Court Has Jurisdiction Over Bid Protest Actions Challenging an Agency's Application of its Regulatory Authority

■ ACSI also argues that the Air Force's proposed procurement is "not in accordance"

with law, because even if the RSA and DoDD 1125.3 are valid, the Air Force has failed to properly accommodate the preferences to which ACSI is entitled. ACSI argues that the Air Force should have accommodated all applicable preferences by using its waiver authority. ACSI argues that the Air Force has this waiver authority under FAR 1.403.[6]

The government argues that this court may not hear this claim either, and seeks to dismiss it. According to the government, this court cannot reach the question of whether the Air Force contracting officer ("CO") acted in accordance with law when interpreting and applying the RSA and its implementing regulations because "[t]he contracting officer in this case had no choice but to include a preference for blind vendors; contracting officers simply do not have the authority to ignore regulations. Therefore, ACSI cannot be challenging the regulation. Instead, it must be challenging the very validity of the preference itself."

While the jurisdictional issue is one of first impression since the passage of the ADRA, the court finds that the government's arguments actually go to the merits of this claim, not to this court's jurisdiction. Whether the Air Force's CO properly accommodated the various preferences or abused his discretion by failing to waive DoDD 1125.3 is a question relating to the lawfulness of the *procurement*, not to the validity of the RSA or the DoD Directive. As noted above, the ADRA provides that the court is to determine whether there was any violation of a statute or regulation in connection with the challenged procurement. Questions regarding

---

**5.** Before Congress enacted the ADRA, the federal district courts heard post-award bid protest challenges to procurement decisions under the waiver of sovereign immunity provided for under the APA. *See Scanwell Labs., Inc. v. Shaffer*, 424 F.2d 859 (D.C.Cir.1970). A party has standing to bring an action under the APA if that party is "a person ... adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702. The court in *Scanwell* interpreted this provision to mean that "one who makes a prima facie showing alleging [that the agency decision was arbitrary or capricious] has standing to sue under section 10 of the Administrative Procedure Act." *See Scanwell*, 424 F.2d at 869.

**6.** FAR 1.401 authorizes federal agencies to "deviate" in the issuance or use of a policy, procedure, solicitation provision, ... contract clause, ... method, or practice of conducting acquisition actions of any kind at any stage of the acquisition process that is inconsistent with the FAR. FAR 1.402 states that such "deviations from the FAR may be granted ... when necessary to meet the specific needs and requirements of each agency." FAR 1.403 allows agencies to apply individual deviations, or waivers, that "affect only one contracting action."

whether there is a conflict among the preferences, or whether the Air Force CO gave full effect to all applicable preferences, or finally whether the CO has discretion to waive DoDD 1125.3, are all questions that relate to the validity of the *procurement,* not the validity of the *regulations themselves.*[7] As such, these issues raise matters within this court's jurisdiction. This court is frequently called upon to determine the reasonableness of a CO's statutory or regulatory interpretations. *See, e.g., Emery Worldwide Airlines,* 49 Fed. Cl. 211 (2001) (requiring an examination of whether the agency properly interpreted its sole-source contracting authority under 39 U.S.C. § 101(f)). Accordingly, the government's motion to dismiss this aspect of ACSI's challenge is denied. The court reviews the merits of ACSI's argument below.

### B. The Air Force CO Did Not Err in Deciding Not to Waive the Requirements of DoDD 1125.3 for the Lackland AFB RFP

ACSI asserts that in order for the Lackland AFB procurement to be in accordance with law, the Air Force CO must waive the RSA's preference for the blind embodied in DoDD 1125.3 in order to accommodate other preference statutes passed by Congress. In particular, ACSI argues that the preference for disadvantaged businesses contained in the HUBZone Act is incompatible with DoDD 1125.3, and thus the super-preference provided for blind vendors in DoDD 1125.3 must be waived. ACSI argues that the Air Force has the authority to waive such requirements under FAR 1.403.

### 1. The HUBZone Act preference is not incompatible with the Randolph–Sheppard Act.

■ As noted above, ACSI's claims rest on its belief that: "The RFP is fatally flawed

because, by its reliance on the 1978 Department of Defense Directive [1125.3] stating that contract award will be made to an SLA whose proposal qualifies within the competitive range ... it effectively ignores and thwarts later statutory and regulatory pronouncements favoring other categories of qualified bidders that are entitled to preferences, such as SDB [small disadvantaged business] or HUBZone preferences." The government counters that ACSI's argument is "fatally flawed" on the grounds that there is no conflict between the RSA and the HUBZone preference. The government argues that the proposed Lackland AFB solicitation gives full meaning to the HUBZone preference.

The HUBZone preference provision provides that, in acquisitions conducted using full and open competition, except in specified circumstances, "[t]he contracting officer shall give offerors from HUBZone small business concerns a price evaluation preference by adding a factor of 10% to all [other] offers. ..." FAR 19.1307(b).

According to the government, there is nothing in this preference that is incompatible with the RSA. In a procurement to which the HUBZone preference applies, the CO is able to implement both. The scores of the HUBZone businesses will be afforded the price adjustments provided by the preference statute. In addition, the preference for blind vendors will also be included, in the event that any SLA is included in the competitive range. Simply because the RSA preference carries greater weight in the military vending procurement process does not, *per se,* create a conflict.

The court agrees with the government. ACSI's assumption that the preference for which it qualifies should preclude the Air Force from applying DoDD 1125.3 is mistak-

---

7. The government contends that this court can only review a CO's decision if the CO has exercised discretion in applying the law to a procurement, and not if the CO has simply applied the law without exercising discretion. Because ACSI is here challenging the CO's failure to exercise discretion in applying the various preference statutes, the government argues that the court does not have jurisdiction. The distinction drawn by the government is too narrow. More-

over, it would lead to needless confusion in adjudicating bid protest disputes by forcing protestors to go to federal district courts to resolve certain issues relating to a specific procurement decision, while coming to this court on others. The ADRA does not mandate this result. This court has jurisdiction under the ADRA to examine whether the CO abused his discretion by failing to exercise it.

en where, as here, each preference statute can be fully implemented. There is no "conflict" requiring the CO to reconcile competing provisions. ACSI will receive the price preference to which it is entitled, and should TCB submit a bid and the CO decide to conduct negotiations, the TCB vendor will be given its priority should it qualify for the competitive range. Contrary to ACSI's contentions, the preferences are not incompatible. Each preference can be given its due. The fact that the RSA preference or priority,[8] if triggered, is superior to the others, does not mean that the various preferences conflict. The fact that one preference is of greater value than the others does not mean that each cannot be fully applied before the contract award is made. The court finds that such is the case here, and there is no inherent conflict between the competing preferences.

In the alternative, the government argues that even if there were a conflict between DoDD 1125.3 and other preferences, the CO did not err in retaining the RSA preference for the Lackland AFB solicitation, because under the basic rules of statutory construction, when more than one statute ostensibly applies, the more specific of the two controls. *See HCSC–Laundry v. United States,* 450 U.S. 1, 6, 101 S.Ct. 836, 67 L.Ed.2d 1 (1981) ("it is a basic principle of statutory construction that a specific statute . . . controls over a general provision. . . ."); *Radzanower v. Touche Ross & Co.,* 426 U.S. 148, 153, 96 S.Ct. 1989, 48 L.Ed.2d 540 (1976) ("It is a basic principle of statutory construction that a statute dealing with a narrow, precise, and specific subject is not submerged by a later enacted statute covering a more generalized spectrum."). Again, the court agrees with the government based on this basic tenet of statutory construction.

In fact, this conclusion was recently affirmed by the Fourth Circuit in *NISH v. Cohen,* 247 F.3d 197 (4th Cir.2001), a case that involved issues similar to those presented here. In *NISH,* a nonprofit agency representing the rights of the severely disabled

challenged the RSA priority afforded to blind vendors in a government mess hall contract procurement. NISH alleged that the preference for the severely disabled contained in the Javits Wagner O'Day Act should have been given the ultimate priority over the RSA preference. In rejecting NISH's challenge, the Fourth Circuit held that because the RSA is the more specific statute dealing explicitly with the issue of contracting priorities in relation to the operation of cafeterias on federal property, the RSA's preference for the blind took precedence over the Javits Wagner O'Day Act, a more general federal procurement statute favoring commodities and services produced by nonprofit agencies for the blind and disabled. *Id.* at 205.

The court sees no reason to depart from the Fourth Circuit's analysis here. Without question, the RSA, which deals with federal vending facilities contracting, is far more specific than the HUBZone Act, which covers government contracting in general. As such, the Air Force reasonably concluded that the RSA preference codified in DoDD 1125.3 should be included without limitation as part of the Lackland AFB solicitation. *See HCSC–Laundry,* 450 U.S. at 6, 101 S.Ct. 836; *Radzanower,* 426 U.S. at 153, 96 S.Ct. 1989.

Finally, the government also argues that the CO would not have had the authority to waive the requirements of DoDD 1125.3 in any event. The government contends that: 1) under FAR 1.403, the CO can only deviate from the FAR, not from other applicable regulations such as the RSA; 2) even if the CO could deviate from the RSA, FAR 1.403 dictates deviation only if the reason for the deviation is unique to the procurement and would not affect other actions, whereas the deviation requested here by ACSI would affect *all* Air Force vending contracts; and 3) deviations of the type sought by ACSI are committed to agency discretion by law and thus cannot be ordered by a court. Because the court concludes that the proposed procurement properly adheres to DoDD 1125.3

**8.** Although argued by the parties, whether the RSA employs the term "preference" (pre–1974) or "priority" (post–1974) is largely irrelevant. It is the prescribed operation of the RSA's prefer-

ence for blind vendors—guaranteeing award once the vendor makes the competitive range for a vending services contract—that really matters.

and the RSA, it is not necessary to examine the reach of FAR 1.403.

### CONCLUSION

Based on the foregoing, the court concludes that the Air Force's procurement decisions made thus far regarding the Lackland AFB contract are not arbitrary, capricious, or otherwise contrary to law. Accordingly, ACSI's motions for preliminary and permanent injunction and a temporary restraining order are **DENIED.**  Defendant's motion to dismiss Counts 4 and 5 of ACSI's complaint is **GRANTED,** as is the government's motion for summary judgment as to all remaining counts of the complaint.  Each party shall bear its own costs.