PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

NISH; GOODWILL SERVICES,
INCORPORATED,
                    *Plaintiffs-Appellants,*

                    v.

WILLIAM S. COHEN, Secretary of
Defense; LOUIS CALDERA, Secretary
of the Army,
                    *Defendants-Appellees,*

RANDOLPH-SHEPPARD VENDORS OF
AMERICA; AMERICAN COUNCIL OF THE
BLIND; NATIONAL EDUCATIONAL AND
LEGAL SERVICES FOR THE BLIND;
VIRGINIA FACILITIES VENDORS;
NATIONAL FEDERATION OF THE BLIND;
STATE OF TEXAS, ex rel Texas
Commission for the Blind; STATE OF
OKLAHOMA, ex rel Oklahoma
Department of Rehabilitation
Services,
                    *Intervenors-Appellees.*

No. 00-1632

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Gerald Bruce Lee, District Judge.
(CA-99-1632)

Argued: December 6, 2000

Decided: April 18, 2001

Before TRAXLER and KING, Circuit Judges, and
Terrence W. BOYLE, Chief United States District Judge for the
Eastern District of North Carolina, sitting by designation.

Affirmed by published opinion. Judge King wrote the opinion, in which Judge Traxler and Chief Judge Boyle concurred.

---

## COUNSEL

**ARGUED:** John S. Pachter, SMITH, PACHTER, MCWHORTER & D'AMBROSIO, P.L.C., Vienna, Virginia, for Appellants. Jeffrica Jenkins Lee, Appellate Staff, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees Cohen, et al.; Andrew David Freeman, BROWN, GOLDSTEIN & LEVY, L.L.P., Baltimore, Maryland, for Appellees Randolph-Sheppard, et al. **ON BRIEF:** Joseph C. Luman, Christopher Wheeler, LUMAN, LANGE & WHEELER, Washington, D.C., for Appellants. David W. Ogden, Assistant Attorney General, Helen F. Fahey, United States Attorney, William Kanter, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees Cohen, et al. John P. Rowley, III, Christopher P. Yukins, David S. Black, HOLLAND & KNIGHT, L.L.P., Falls Church, Virginia; Peter A. Nolan, SHEIN-FELD, MALEY & KAY, P.C., Austin, Texas, for Appellees Randolph-Sheppard, et al.

---

## OPINION

KING, Circuit Judge:

In this action arising in the Eastern District of Virginia, plaintiffs NISH and Goodwill Services, Incorporated (collectively "NISH"), appeal the district court's award of summary judgment to Secretary of Defense Cohen and Secretary of the Army Caldera ("Secretaries"), the defendants below. NISH sought a declaratory judgment with respect to the proper interpretation of the Randolph-Sheppard Act ("RS Act"), particularly its applicability to the operation of military mess hall facilities at Fort Lee, Virginia. The district court concluded that the RS Act applies to the operation of such facilities, and therefore NISH was not entitled to negotiate the contract for mess hall services at Fort Lee. For the reasons set forth below, we affirm.

## I.

## A.

The RS Act, 20 U.S.C. § 107, was enacted in 1936 to enlarge economic opportunities of the blind, by giving blind persons priority to operate vending facilities on federal property. This appeal focuses on a 1974 amendment to the RS Act, by which the term "vending stand" in § 107e(7) was changed to "vending facility," and by which the statutory definition of vending facility was set forth as including "automatic vending machines, cafeterias, snack bars, cart services, shelters, [and] counters[.]" *Id.* § 107e(7). In this appeal, we specifically deal with the meaning of the statutory term "cafeterias," and we must decide whether that term encompasses military mess hall facilities.

## B.

The factual predicate for this litigation is straightforward. NISH is a nonprofit agency designated in the Code of Federal Regulations, *see* 41 C.F.R. § 51-3.1, to represent other nonprofit agencies employing the severely disabled in the production of items and services for purchase by government agencies under the Javits-Wagner-O'Day Act, 41 U.S.C §§ 46-48c ("JWOD Act").[1] In November 1998, NISH expressed interest in an anticipated replacement contract for mess hall services at Fort Lee. Subsequently, on June 30, 1999, before NISH had made a formal proposal on the Fort Lee contract, the Virginia Agency for the Blind contacted officials at Fort Lee to convey its interest in bidding for the same contract, in accordance with the provisions of the RS Act. At the time the competing interests became

---

[1]The JWOD Act empowers the Committee for Purchase from People Who Are Blind or Severely Disabled ("Committee"), whose mission is to provide opportunities for its clientele — nonprofit agencies employing the blind or severely disabled — in producing goods and services sold to the federal government. Like the RS Act, the JWOD Act was enacted for the benefit of the blind, but it was later amended to include the severely disabled. The Committee publishes the statutorily mandated "procurement list" referred to in the accompanying text, which identifies commodities and services produced by eligible nonprofit agencies. *See infra* Part I.C.2.

apparent, Fort Lee's mess hall services contract had not been placed upon the "procurement list" mandated by § 47(a) of the JWOD Act.

In an effort to reconcile application of the RS Act with the provisions of the JWOD Act, the contracting officer responsible for food service operations at Fort Lee ("Contracting Officer") sought assistance and advice from various sources, including Fort Lee's legal staff, the Army's Training and Doctrine Command ("TRADOC"), and the Army's Office of the Principal Assistant Responsible for Contracting. In addition, the Contracting Officer consulted a November 12, 1998 memorandum prepared by the General Counsel of the Department of Defense ("DOD"), as well as a March 22, 1999 memorandum from the Deputy Assistant Secretary of the Army for Procurement. These memoranda discuss and analyze the applicability of the RS Act to DOD military dining facilities, and they also address the application of Army Regulation 210-25, which implements the RS Act within the Army.

Using these guideposts, the Contracting Officer determined that the mess hall facilities at Fort Lee were "cafeterias" under the terms of the RS Act, specifically 20 U.S.C. § 107e(7), primarily because they were "prepared food serving lines with table seating facilities." Decl. of Terry A. Hyatt (Contracting Officer) (Feb. 16, 2000), J.A. 349. Having concluded that the RS Act applied to Fort Lee's food service requirements, the Contracting Officer then ascertained that it was inappropriate to negotiate an acquisition contract with NISH to provide mess hall services at Fort Lee. After being informed of the Contracting Officer's final decision, NISH commenced this proceeding in the district court, seeking, inter alia, a declaration that the RS Act does not apply to contracts to provide military mess hall services. From the adverse ruling below, NISH takes this appeal. We possess jurisdiction pursuant to 28 U.S.C. § 1291.

C.

NISH contends that the JWOD Act — and not the RS Act — applies to and controls the award of the mess hall services contract at Fort Lee. The JWOD Act governs, according to NISH, because a third statute — the Competition in Contracting Act — precludes

application of the RS Act in this instance. A brief overview of all three statutes is therefore in order.

### 1.

The RS Act was enacted by Congress with the purpose of providing employment opportunities and encouraging the economic self-sufficiency of blind persons. 20 U.S.C. § 107; *see Committee of Blind Vendors v. District of Columbia*, 28 F.3d 130, 131 (D.C. Cir. 1994). As we have noted, the RS Act was amended in 1974, effectively establishing a cooperative federal-state program that gives contracting priority to blind persons operating vending facilities on federal property. *See Committee of Blind Vendors*, 28 F.3d at 130 (citing § 107(a)-(b)).

The 1974 amendment directs the Department of Education ("DOE") to promulgate regulations to ensure that, whenever feasible, one or more vending facilities are established on all federal properties, and that priority in their operation is given to licensed blind persons. *See* 20 U.S.C. § 107(b). The Secretary of DOE is authorized to oversee implementation of the RS Act through the Commissioner of the Rehabilitative Services Administration ("Commissioner"). *Id.* § 107d-3(e). Among the duties assigned to the Secretary of DOE is the designation of State Licensing Agencies ("SLAs"), which are authorized to issue licenses to blind citizens for the operation of vending facilities on federal property for the sale of newspapers, magazines, tobacco products, foods, beverages, and other items. *Id.* § 107a(a)(5). The Virginia Agency for the Blind, as well as the various intervenors in this litigation, are SLAs designated by the Secretary of DOE to participate in contracts under the RS Act.

### 2.

The JWOD Act was enacted in 1971, and it established an independent federal agency now known as the Committee for Purchase from People Who Are Blind or Severely Disabled ("Committee"). *See supra* note 1. The primary objective of the Committee is to provide training and employment opportunities for persons who are blind or have severe disabilities. *See Barrier Indus., Inc. v. Eckard*, 584 F.2d 1074, 1076 (D.C. Cir. 1978). The Committee is required to publish

the procurement list, consisting of commodities and services that it considers suitable for purchase by the government from qualified nonprofit agencies for the blind and disabled. *See* 41 U.S.C. § 47(a)(1). The procurement list is generally a mandatory procurement source for the federal government, i.e., a government agency wishing to obtain a commodity or service listed by the Committee is required to obtain the item from the qualified agency at the price established by the Committee. *See id.* § 48. The JWOD Act offers a "sheltered" environment, permitting individuals with disabilities to work for entities such as plaintiff Goodwill Services. By comparison, the RS Act takes a slightly different tack by encouraging blind persons to be entrepreneurial and to run their own businesses.

3.

NISH's position on appeal, however, hinges primarily upon a third statute, the Competition in Contracting Act, 10 U.S.C. § 2304 ("CICA"). CICA, enacted in 1994, requires that the military use "full and open competition" when contracting for "property or services[,]" except "in the case of procurement procedures otherwise expressly authorized by statute[.]" *Id.* § 2304(a)(1). The JWOD Act, for example, embodies procurement procedures explicitly exempted by CICA. *See id.* § 2304(f)(2)(D). NISH maintains that, because the RS Act does not specifically encompass military mess hall facilities, and does not authorize "procurement," its auspices do not provide a similar statutory procurement procedure. Thus, according to NISH, CICA precludes the RS Act from governing the contract for mess hall services at Fort Lee.

II.

Since the facts underlying this appeal are not in dispute, the district court decided the questions of law by way of summary judgment. We review its decision de novo. *See Providence Square Assocs., L.L.C. v. G.D.F., Inc.*, 211 F.3d 846, 850 (4th Cir. 2000). In this instance, the district court, ruling in favor of the Secretaries, held that the mess hall facilities at Fort Lee are "cafeterias" on eligible federal property, and that licensed blind organizations, such as the Virginia Agency for the Blind, are thereby accorded the favorable treatment prescribed by the RS Act.

The rule to be applied here is that enunciated by the Supreme Court in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843 (1984). When a statute, in this instance, the RS Act, "is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* Accordingly, when an agency determination that is entitled to deference is being challenged — as in this case — we defer to the agency's interpretation if it "give[s] reasonable content to the statute's textual ambiguities." *Department of Treasury, IRS v. FLRA*, 494 U.S. 922, 933 (1990). A reviewing court may not second-guess the wisdom of the agency's reasonable policy choice. *Chevron*, 467 U.S. at 866.[2]

When, as here, an agency, such as DOE, is charged with implementation of a statute, its policy decisions are entitled to deference. *See Brown & Williamson Tobacco Corp. v. FDA*, 153 F.3d 155, 161 (4th Cir. 1998) ("[A] precondition to deference under *Chevron* is a congressional delegation of administrative authority.") (quoting *Adams Fruit Co. v. Barrett*, 494 U.S. 638, 649 (1990)), *aff'd* 529 U.S. 120 (2000); *see also Randolph-Sheppard Vendors of Am. v. Weinberger*, 795 F.2d 90, 111 (D.C. Cir. 1986) ("The scope of the statute and the regulations promulgated thereunder should, in the first instance, be one for the agency charged with its administration."); *cf. Newport*

---

[2]NISH contends that *Chevron* deference does not apply because this case "involves pure statutory interpretation[.]" Appellant's Br., at 20. To buttress its position, NISH relies on an inapposite and unpublished decision of this Court, *EFCO Corp. v. NLRB*, Nos. 99-1147, 99-1277, 2000 WL 632468, at *3-4 (4th Cir. May 17, 2000) (refusing to apply *Chevron* deference to a decision of the NLRB, because the "Board was engaged in the classic judicial exercise of resolving competing claims under the statute, a function which does not implicate the Supreme Court's central concerns in *Chevron*") (citation omitted). In addition to running afoul of Local Rule 36(c) (citation of unpublished opinions disfavored), NISH's position on this issue must be rejected because it contravenes the explicit instructions of *Chevron*. Furthermore, this is not a case where the statutes at issue unambiguously conflict with the result reached by the Contracting Officer. *See Chevron*, 467 U.S. at 842-43 (holding that courts should reject agency interpretations that are contrary to unambiguous and clear congressional intent). Indeed, as we explain, the relevant statutes mandate that the RS Act applies to the Fort Lee contract.

*News Shipbldg. & Dry Dock Co. v. Stilley*, No. 00-1155, 2001 WL 242187, \*1 (4th Cir. Mar. 12, 2001) (refusing to accord deference to adjudicatory board not charged with policy making role).

### III.

### A.

We first analyze the plain meaning of the RS Act, and we must decide whether it reasonably encompasses military mess hall facilities, including those at Fort Lee. The term "cafeterias" — found in the 1974 amendment — is not otherwise defined in the RS Act. However, duly promulgated regulations of both DOE and DOD describe "cafeterias" as "food dispensing" and "capable of providing [or currently providing] a broad variety of prepared foods and beverages (including hot meals) primarily through the use of a [serving] line where the customer serves [or selects for] himself from displayed selections." 34 C.F.R. § 395.1(d) (1999) (DOE); 32 C.F.R. § 260.6(b) (1999) (DOD) (bracketed terms are exclusive to DOD regulations).[3] Moreover, both the DOD and DOE regulations explain that a cafeteria may be "fully automatic" or with "some limited waiter or waitress service." *Id.*[4]

The RS Act requires DOE to promulgate regulations establishing priority for blind vendors to operate cafeterias, subject to certain restrictions. *See* 20 U.S.C. § 107d-3(e).[5] DOE regulations offer two

---

[3]The RS Act's regulations are consistent with common definitions of "cafeteria." For example, one dictionary defines the term as "a self-service restaurant or lunchroom." Webster's Third New International Dictionary 313 (3d ed. 1976).

[4]The DOE and DOD regulations each specify that "[t]able or booth seating facilities are always provided." 34 C.F.R. § 395.1(d) (1999) (DOE); 32 C.F.R. § 260.6(b) (1999) (DOD).

[5]The DOE regulations, promulgated pursuant to the RS Act, provide:

Priority in the operation of cafeterias by blind vendors on Federal property shall be afforded when the Secretary determines, on an individual basis, and after consultation with the appropriate property managing department, agency, or instrumentality, that such operation can be provided at a reasonable cost, with food

options by which a federal agency may implement the priority mandated for blind vendors. First, the agency may "[e]stablish the ability of blind vendors to operate a cafeteria . . . at comparable cost and of comparable high quality [by inviting SLAs] to respond to solicitations . . . when a cafeteria contract is contemplated." 34 C.F.R. § 395.33(b). Second, the agency may, in the alternative, enter into direct negotiations with the SLA to implement the cafeteria priority. If the agency determines that the SLA proposal is competitive, and if the SLA proposal has been ranked among those that have a reasonable chance of being selected for final award, the agency is to consult with DOE. *See id.* § 395.33(b), (d). If, however, the SLA proposal is determined not to be within the competitive range, the agency may award the contract to the most highly evaluated offeror. *See* 32 C.F.R. § 260.3(g)(1)(i).

Plaintiffs contend that military mess hall facilities are not "cafeterias" under the RS Act because, in contrast to typical cafeterias (where meals are purchased by the general public from private funds), meals at military mess halls are provided to soldiers from appropriated funds, as part of the military mission. Indeed, the RS Act exempts certain military-controlled vending facilities from its provisions. By its terms, the RS Act does not apply to "income from *vending machines* within retail sales outlets under the control of exchange

---

of a high quality comparable to that currently provided employees, whether by contract or otherwise. Such operation shall be expected to provide maximum employment opportunities to blind vendors to the greatest extent possible.

34 C.F.R. § 395.33(a).

The DOD regulations regarding cafeteria contract priorities are strikingly similar to those promulgated by DOE. *See* 32 C.F.R. § 260.3(g)(1)(i)-(iii) (1999); *see also* 43 Fed. Reg. 25337, 25338 (1978) (explaining that DOD intended to implement rules consistent with those of DOE). This fact is significant, underscoring the point that DOD's role in implementation of the RS Act is primarily to follow the decisions of DOE. It is DOE's administration of the RS Act that is authorized by statute, and thus entitled to deference. *Shanty Town Assocs. Ltd. P'ship v. EPA*, 843 F.2d 782, 790 n.12 (4th Cir. 1988) (concluding that there is no deference accorded interpretation of a statute that agency does not administer).

or ships' stores systems . . . [or] by the Veterans Canteen Service[.]" 20 U.S.C. § 107d-3(d) (emphasis added). Significantly, however, the RS Act makes no such distinction regarding cafeterias. Instead, it simply indicates that cafeterias are to be considered covered under the RS Act as "vending facilities." *See id.* § 107e(7).

The Fort Lee facilities at issue do not fall under the explicit vending machine exception contained in the RS Act. And it would be inappropriate for us to read an additional exception into the RS Act. The omission by Congress of language in one section of a statute that is included in another section of the same statute generally reflects Congress's intentional and purposeful exclusion in the former section. *See Piney Mountain Coal Co. v. Mays*, 176 F.3d 753, 765 (4th Cir. 1999) (citing *Russello v. United States*, 464 U.S. 16, 23 (1983)). Thus, there is no basis for us to conclude that the Contracting Officer acted unreasonably in deciding that the term "cafeterias" applies to the mess hall facilities at Fort Lee.[6]

### B.

NISH also contends that CICA prevents the RS Act from applying to the contract for mess hall services at Fort Lee, and that the JWOD Act instead applies. Under CICA, any expenditure of tax dollars on federal procurements through means other than open competition must be expressly authorized by statute. *See* 10 U.S.C. § 2304(a)(1). The Secretaries maintain, however, that the competition requirements of CICA do not apply to the RS Act because of the exception for "procurement procedures otherwise expressly authorized by statute."

---

[6]We also find no support for NISH's contention that military mess halls are not "vending facilities" because no point of sale transaction occurs and because the vendor does not set a price for sale to the public. Whether such mess halls actually engage in "vending," under the ordinary meaning of "vending," is irrelevant. Congress specifically defined "vending facilities" as, inter alia, "cafeterias" for purposes of 20 U.S.C. § 107e(7), and DOE has properly construed the term "cafeterias" to include military mess halls. *See, e.g.*, *United States v. Midgett*, 198 F.3d 143, 146 (4th Cir. 1999) (concluding that courts should only look to the ordinary meaning of a statutory term in the "absence of a definition from Congress").

*Id.* Indeed, the RS Act contains an authorized set of procurement procedures, *see supra* Part III.A, that would seem to make CICA inapplicable here. NISH contends, on the other hand, that because the RS Act is not itself a statutory procurement procedure, the RS Act fails to meet CICA's exemption for "procurement procedures otherwise expressly authorized by statute[.]"

CICA, however, broadly defines "procurement" as including "all stages of the process of acquiring property or services, beginning with the process for determining a need for property or services and ending with contract completion and closeout." 10 U.S.C. § 2302(3)(A) (adopting the definition of "procurement" in the Office of Federal Procurement Policy Act, 41 U.S.C. § 403). The provisions of the RS Act clearly fit this sweeping definition of procurement. Indeed, it authorizes the Secretary of DOE to secure "the operation of cafeterias on Federal property by blind licensees . . . whether by contract or otherwise." 20 U.S.C. § 107d-3(e).[7] Our adoption of the contrary position — that the RS Act is not a procurement statute pursuant to CICA — would require a misreading and misapplication of both statutes.

## C.

Finally, we analyze the provisions of the JWOD Act itself, absent the limitations imposed by CICA. On their face, both the RS Act and the JWOD Act appear to apply in this case. The Contracting Officer observed this apparent conflict, but followed the advice of TRADOC that "[i]t is a basic tenet of statutory construction that when two statutes ostensibly apply, the more specific of the two control[s]." Decl. of Terry A. Hyatt (Feb. 16, 2000), J.A. 350. We find the conclusion of TRADOC and the Contracting Officer on this point to be not only

---

[7]NISH also points to the Federal Acquisition Regulation ("FAR"), which, by its terms, does not apply when "statutes, such as the following, expressly authorize or require that acquisition be made from a specified source or through another agency." 48 C.F.R. § 6.302-5(b) (1998) (listing statutes). NISH relies on the omission of any reference to the RS Act in this portion of FAR as evidence that the RS Act does not involve government purchases of goods or services. NISH's reliance on FAR is misplaced, however, because FAR — by use of the phrase "such as the following" — makes clear that its list is not exhaustive.

reasonable, but also entirely correct. The RS Act deals explicitly with the subject at issue — the operation of cafeterias — whereas the JWOD Act is a general procurement statute. Because the RS Act is a "specific statute closely applicable to the substance of the controversy at hand[,]" it must control. *Sigmon Coal Co. v. Apfel*, 226 F.3d 291, 302 (4th Cir. 2000) (citing *Farmer v. Employment Sec. Comm'n of North Carolina*, 4 F.3d 1274, 1284 (4th Cir. 1993)); *see also HCSC-Laundry v. United States*, 450 U.S. 1, 6 (1981); *Radaznower v. Touche Ross & Co.*, 426 U.S. 148, 153 (1976).

D.

In addition to devising and implementing regulations, DOE has been quite explicit and consistent in expressing its position regarding the applicability of the RS Act to military mess hall facilities. *Cf. Credit Union Ins. Corp. v. United States*, 86 F.3d 1326, 1332 (4th Cir. 1996) ("[W]e accord much less deference to an agency's interpretations of a statute that conflict with the agency's previous interpretations of that same statute."). In addressing the issue, the Commissioner decided that "the RS Act clearly covers all types of food service operations on military bases, including military troop mess halls[.]" Mem. of Frederick K. Schroeder, Commissioner of Rehabilitative Services Administration (Aug. 14, 1997), J.A. 675-78. The Commissioner concluded:

> Any attempt to draw a distinction between appropriated funded cafeterias and concession cafeterias is merely a fiction to justify placing full food service activities on Committee's procurement list. There is no basis either in the Act or in the legislative history for [such a] position.

*Id.* at 678. Similarly, the General Counsel of DOD, after reviewing and analyzing the RS Act, the applicable regulations, and other DOE memoranda, determined that "the assertion that the Act does not apply to military dining facilities cannot withstand analysis." Mem. of Judith A. Miller, General Counsel of DOD (Nov. 12, 1998), J.A. 670-73.

Furthermore, the Comptroller General of the United States has twice opined that an appropriated funds food service contract consti-

tutes a cafeteria subject to the RS Act's priorities. *See Matter of: Dep't of the Air Force—Reconsideration*, 1993 WL 212641 at *7; Comptroller General of the United States, Opinion Letter to Senator Jennings Randolph, B-176886 (June 29, 1976) ("Nowhere is there support for the view that the [RS Act], even by implication, contemplates priority to be given to *only* those vending facilities where a sales transaction takes place *contemporaneously* with the vendee obtaining the articles purchased.") (emphasis in original). Although the decisions of the Comptroller General were announced before CICA was enacted, and come from a political authority which has been characterized as "undeserving of judicial deference[,]" *Delta Chem. Corp. v. West*, 33 F.3d 380, 382 (4th Cir. 1994), we find it significant that yet another federal government decisionmaker has found that the RS Act applies in a similar instance.

Insofar as the Contracting Officer's decision conforms with the various governmental authorities that have previously considered the issue, the reasonableness of her decision is strongly indicated. While the fact of consistency, standing alone, may not warrant affirmation of her judgment, our independent analysis confirms that her application of the RS Act was both permissible and correct.

## IV.

For these reasons, we find that the district court correctly upheld the Contracting Officer's decision that the RS Act applies to the mess hall facilities at Fort Lee. The judgment of the district court must accordingly be affirmed.

*AFFIRMED*