OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS
JOHN CORNYN

April 15, 2002

The Honorable Mike Moncrief
Chair, Committee on Health
  and Human Services
Texas State Senate
P.O. Box 12068
Austin, Texas 78711

Opinion No. JC-0489

Re: Whether article III, section 50 of the Texas Constitution prohibits the Texas Commission for the Blind from contracting with the United States government to operate various vending facilities on federal property under the Federal Randolph-Sheppard Act, 20 U.S.C. ch. 6A, if the contract "create[s] financial exposure to the State for a multi-million dollar service agreement with . . . Federal Departments" (RQ-0455-JC)

Dear Senator Moncrief:

Article III, section 50 of the Texas Constitution and other similar provisions forbid a state agency to lend the state's credit solely to aid a private interest. TEX. CONST. art. III, § 50; cf. id. art. III, §§ 51, 52; id. art. VIII, § 3. Under the Federal Randolph-Sheppard Act, 20 U.S.C. chapter 6A (1994 & Supp. V 1999), the Texas Commission for the Blind (the "Commission") contracts with the federal government to operate vending facilities on federal property, which the Commission then licenses blind citizens to operate. See NISH v. Cohen, 247 F.3d 197, 200-01 (4th Cir. 2001); Tex. Att'y Gen. Op. No. O-2070 (1940) at 3. Referring to these vending contracts, you ask whether the Commission violates article III, section 50 of the Texas Constitution, "any other section of the Constitution, or any other statute or law" by entering "a multi-million dollar service agreement with [a] Federal Department for services to be provided to that Department, without adequate financial assurances from the third[] party to protect the financial obligation of the State."[1] To the extent that the arrangement constitutes a lending of credit to a blind licensee for the purpose of article III, section 50 or other constitutional limitations on the use of public funds, we conclude that it has been found to accomplish a public purpose. We assume that the arrangement is adequately controlled to ensure that the public purpose is accomplished.

You indicate that the Commission, in accordance with the Federal Randolph-Sheppard Act, 20 U.S.C. § 107 (1994), "proposes to enter . . . multi-million dollar service agreements for cafeteria

---

[1]Letter from Honorable Mike Moncrief, Chairman, Senate Committee on Health & Human Services, to Honorable John Cornyn, Texas Attorney General (Oct. 16, 2001) (on file with Opinion Committee) [hereinafter Request Letter].

services." Request Letter, *supra* note 1, at 1. Once the Commission enters a contract, you continue, it "contracts with a private individual to perform the services under the contract." *Id.* Profits earned for providing the cafeteria services "go to the private third[] party with a set-aside fee to the State." *Id.* You believe that the Commission's arrangement with the federal government may violate article III, section 50 of the Texas Constitution, some other constitutional provision, or some statute because the state, and not the private third party, is obligated to the federal government to provide cafeteria services. *See id.*

With respect to vending facilities, including cafeterias, on military facilities, we have been told that the Commission has "secured financial assurance . . . proportionate to the potential liability under the contract between the State and the Department of Defense."[2]  For example, although we have been told it is no longer in effect,[3] the Commission had an "indemnity agreement from a large reputable food service company assisting [the Commission] in managing" one contract. Nolan Brief, *supra* note 2, at 2. And the Commission currently "has a $500,000 letter of credit to provide . . . financial assurance against the liability" on another contract. *Id.* We do not in this opinion consider whether a particular financial assurance is adequate. *See, e.g.,* Tex. Att'y Gen. Op. Nos. JC-0032 (1999) at 4 (stating that question of fact is beyond purview of this office), JC-0027 (1999) at 3 (stating the questions of fact cannot be addressed in attorney general opinion), JC-0020 (1999) at 2 (stating that investigation and resolution of fact questions cannot be done in opinion process).

Because you appear primarily concerned about the lending of credit issue that corresponds to article III, section 50, we limit our review of constitutional and statutory provisions to those relating to that issue. But before discussing the constitutional requirements, we will briefly summarize relevant provisions of the Federal Randolph-Sheppard Act (the "Act"), 20 U.S.C. § 107 (1994), and state statutory provisions, found in the Texas Human Resources Code, authorizing the Commission to perform certain functions under the Act.

## I. The various laws

### A. The Randolph-Sheppard Act, 20 U.S.C. § 107

The Federal Act was enacted in 1936 to provide blind persons with remunerative employment and with expanded economic opportunities by giving them priority to operate vending facilities on federal property. 20 U.S.C. § 107(a) (1994); *NISH v. Cohen*, 247 F.3d 197, 198, 200 (4th Cir. 2001); *see also Tex. State Comm'n for the Blind v. United States*, 796 F.2d 400, 402 (Fed. Cir. 1986), *cert. denied*, 479 U.S. 1030 (1987). Congress amended the Act in 1974, "effectively establishing a cooperative federal-state program that gives contracting priority to blind persons operating vending facilities on federal property." *NISH*, 247 F.3d at 200. The term "vending

---

[2]Letter from Peter A. Nolan, Winstead Sechrest & Minick, to Susan D. Gusky, Chair, Opinion Committee, Office of the Attorney General, at 2 (Dec. 10, 2001) (on file with Opinion Committee) [hereinafter Nolan Brief].

[3]Telephone Conversation with Peter A. Nolan, Winstead Sechrest & Minick (Jan. 29, 2002).

facility" is defined as "automatic vending machines, cafeterias, snack bars, cart services, shelters, counters, and . . . other appropriate auxiliary equipment." 20 U.S.C. § 107e(7) (1994); *see In re: Dep't of the Air Force–Reconsideration*, 72 Comp. Gen. 241, B-250, 465, B-250, 783; B-250465.6, B-250465.7, B-250783.2, 1993 WL 212641, *2 (Comptroller General, June 4, 1993); Md. Att'y Gen. Op. No. 90-061 (1990), 1990 WL 595349, *4.

A brief we have received suggests that you may be particularly concerned with the Commission's contracts to operate cafeterias on military bases. Nolan Brief, *supra* note 2, at 2. The Secretary of Education, who is responsible for adopting rules to interpret and enforce the Act, *see* 20 U.S.C. § 107(b) (1994); *Randolph-Sheppard Vendors of Am. v. Weinberger*, 795 F.2d 90, 93 (D.C. Cir. 1986), defines the term "cafeteria":

> *Cafeteria* means a food dispensing facility capable of providing a broad variety of prepared foods and beverages (including hot meals) primarily through the use of a line where the customer serves himself from displayed selections. A cafeteria may be fully automatic or some limited waiter or waitress service may be available and provided within a cafeteria and table or booth seating facilities are always provided.

34 C.F.R. § 395.1(d) (2001) (emphasis in original); *see also NISH*, 247 F.3d at 202-03. In *NISH v. Cohen*, the United States Court of Appeals for the Fourth Circuit held that the Act applies to military mess-hall facilities. *NISH*, 247 F.3d at 205-06; *see also Southfork Sys., Inc. v. United States*, 141 F.3d 1124, 1127 (applying Act's priority to military mess halls in Texas); *NISH v. Cohen*, 95 F. Supp. 2d 497, 505 (E.D. Va. 2000), *aff'd, NISH*, 247 F.3d 197.

Under the Act, the federal government contracts with a state to operate a vending facility on federal property. This "two-tiered" Business Enterprise Program, which is administered by the United States Secretary of Education, permits a blind vendor to apply to operate a vending facility on federal property. *See Randolph-Sheppard Vendors of Am.*, 795 F.2d at 93; *see also* 34 C.F.R. § 361.81 (2001) (defining "Business Enterprise Program"). The Secretary designates a state agency in each state to license blind United States citizens to operate "vending facilities on Federal and other property" in the state. 20 U.S.C. § 107a(a)(5) (1994); *Randolph-Sheppard Vendors of Am.*, 795 F.2d at 93. The state licensing agency, among other things, submits bids to the federal government to operate various vending facilities on federal property, including "military dining facilities," and, if selected, contracts to operate the facilities. *NISH v. Cohen*, 191 F.R.D. 94, 96 (E.D. Va. 2000). The state licensing agency then licenses a blind vendor to manage each facility. 20 U.S.C. § 107a(a)(5) (1994); 34 C.F.R. § 395.7 (2001); *Randolph-Sheppard Vendors of Am.*, 795 F.2d at 93.

## B. State statutes related to the Federal Act

State law specifically authorizes the Commission to "administer the Business Enterprises Program in accordance with the provisions of the Randolph-Sheppard Act." Tex. Hum. Res. Code

ANN. § 94.016(a) (Vernon Supp. 2002); *see also Hearings on Tex. H.B. 1400 Before the House Comm. on Human Servs.*, 76th Leg., R.S. (Mar. 16, 1999) (testimony of Terry Murphy, Executive Director, Texas Commission for the Blind) (stating that Act sets up Business Enterprise Program, and Commission is designated to administer that program in Texas). The Commission is the state-licensing agency in Texas for the Business Enterprises Program under the Act, as it has been since 1936. *See Automated Communications Sys., Inc. v. United States*, 49 Fed. Cl. 570, 572 n.1 (Fed. Cl. 2001); *see also Southfork Sys., Inc.*, 141 F.3d at 1127 (indicating that federal contracting officer negotiated with Commission to operate enlisted-personnel cafeteria complex at Lackland Air Force Base); SUNSET ADVISORY COMM'N STAFF REPORT, TEXAS COMM'N FOR THE BLIND 47, 48 (1998).

Thus, the Commission "negotiates and signs contracts with the" federal government and signs a manager's agreement with a licensed blind person, who is the vending facility's sole proprietor. SUNSET ADVISORY COMM'N STAFF REPORT, TEXAS COMM'N FOR THE BLIND 52, 63 app. B (1998). The Sunset Advisory Commission, which reviewed the Commission in 1998, summarized the division of duties with respect to the Commission and the licensed manager of a vending facility:

> [The Commission] provides a manager with initial start-up costs, equipment, and equipment maintenance for all manned facilities, which does not have to be re-paid. State and federal host sites typically do not charge the licensed manager for floor costs, utilities, and other costs that are negotiated in a contract. . . . The manager must see to the daily operations of the facility including hiring, maintaining inventory, managing funds, ordering foods and beverages, and meeting sanitation requirements. The manager must reimburse the [Commission] for lost or unaccounted[-]for equipment. The [Commission], with the participation of the Elected Committee of Managers, mediates complaints or grievances from the host or the licensed manager, and can place managers on probation for 30 days to several months, and has authority to revoke [the] manager's certification.

*Id.* at 63 app. B. In 1997, Business Enterprises Program managers licensed by the Commission operated vending facilities on forty-eight federal sites in Texas. *See id.*

In Attorney General Opinion O-2070, a 1940 opinion, this office concluded that the Commission may "enter into a joint undertaking with a department of the Federal government by the terms of which it will act as licensing agency for the blind operators of stands in federal buildings in this State." Tex. Att'y Gen. Op. No. O-2070 (1940) at 4; *see also* Tex. Att'y Gen. Op. No. O-5132 (1943) at 2-3 (citing Attorney General Opinion O-2070 with approval). The Commission's authority, according to the opinion, springs from its statutory authority to "aid the blind . . . in finding employment"; to "furnish materials, tools and books for the use as a means in rehabilitating such persons"; and to "take such measures, in cooperation with other authorities . . . for the vocational guidance of adults having seriously defective sight." Tex. Att'y

Gen. Op. No. O-2070 (1940) at 3-4 (quoting TEX. REV. CIV. STAT. ANN. art. 3207a, § 2, *repealed by* Act of May 27, 1979, 66th Leg., R.S., ch. 842, art. I, § 2(1), 1979 Tex. Gen. Laws 2333, 2429).

Consistently with Attorney General Opinion O-2070, we conclude that the Commission is authorized by law to contract with the federal government to operate a vending facility on federal property, by the terms of which the Commission licenses a blind vendor to operate the vending facility. *See* Tex. Att'y Gen. Op. No. O-2070 (1940) at 2-3. The substance of the statute on which the 1940 opinion is based has been codified as various sections of chapter 91, subchapter C of the Human Resources Code. Section 91.021(a) gives the Commission "primary responsibility" for providing "all services to visually handicapped persons," with two exceptions not relevant here. TEX. HUM. RES. CODE ANN. § 91.021(a) (Vernon 2001); *see id.* § 91.002(4) (defining "visual handicap"). Section 91.023 permits the Commission to "furnish materials, tools, books, and other necessary apparatus and assistance for use in rehabilitating blind and visually handicapped persons." *Id.* § 91.023. And section 91.021(d) requires the Commission to "enter into agreements with the federal government to implement federal legislation authorizing the provision of services to the visually handicapped." *Id.* § 92.021(d).

The Commission's duty "to provide vocational rehabilitation services to eligible blind disabled individuals" appears to further support its authority to contract with the federal government to operate vending facilities on federal property, which the Commission then licenses blind individuals to manage. TEX. HUM. RES. CODE ANN. § 91.052(a) (Vernon 2001). "Vocational rehabilitation" or "vocational rehabilitation services" are those services that the Commission "determines are necessary to compensate a blind disabled individual for an employment handicap so that the individual may engage in a remunerative occupation. The terms include . . . customary occupational tools and equipment; maintenance; training books and materials; and other goods and services for which the commission receives financial support under federal law." *Id.* § 91.051(6); *cf.* 34 C.F.R. § 361.48 (2001) (defining "vocational rehabilitation services" for an individual with disabilities). The Commission must "cooperate with the federal government to accomplish the purposes of federal laws relating to vocational rehabilitation and closely related activities" and must negotiate agreements with the federal government even if the Commission has to waive or modify state law to conform to federal requirements and to maximize federal financial support. TEX. HUM. RES. CODE ANN. § 91.053 (Vernon 2001); *cf. also id.* §§ 94.002-.005 (authorizing Commission to administer state's statutory counterpart to Federal Randolph-Sheppard Act, chapter 94, Human Resources Code, which provides Commission licensees priority for operating "a vending facility or a facility with vending machines" on state property).

## C. Constitutional restrictions on lending the state's credit

You are, nevertheless, concerned that the vending facility arrangements violate article III, section 50 of the Texas Constitution. *See* Request Letter, *supra* note 1, at 2. Article III, section 50 generally prohibits a state agency from lending the state's credit to aid any individual, association, or corporation. TEX. CONST. art. III, § 50; *see also* Tex. Att'y Gen. Op. No. O-2070 (1940) at 5. You also ask about other constitutional provisions, by which we understand you to ask about other

provisions that analogously prohibit the use of public funds solely for a private purpose. *See, e.g.,* TEX. CONST. art. III, §§ 51, 52 (prohibiting legislature to "make any grant or authorize the making of any grant of public moneys to any individual, association . . . , . . . or other corporations whatsoever . . . ." and prohibiting a county, city, town, or other political corporation or subdivision to "lend its credit or to grant public money" to aid individual, association, or corporation); *id.* art. VIII, § 3 (requiring that taxes be levied and collected "for public purposes only"); *id.* art. XI, § 3 (prohibiting county, city, or other municipal corporation from loaning its credit). This office previously has suggested that a prohibited "lending of credit requires the" government to assume "some kind of financial liability." Tex. Att'y Gen. Op. No. DM-382 (1996) at 10. *But cf.* 1 GEORGE D. BRADEN ET AL., THE CONSTITUTION OF THE STATE OF TEXAS: AN ANNOTATED AND COMPARATIVE ANALYSIS 225 (1977) ("Section 50 . . . is an involved and somewhat imprecise way of saying that the state may not aid anybody by lending him money; by providing him land, goods, or services on credit; or by guaranteeing payment to a third party who aids anybody by lending him money or providing him land, goods, or services on credit.").

Like other constitutional prohibitions on the use of public funds to benefit a private individual or entity, article III, section 50 permits a loan of state credit only if the loan serves a public purpose and if the transaction is sufficiently controlled to ensure that the public purpose is accomplished. *See* Tex. Att'y Gen. Op. No. JC-0353 (2001) at 2; *see also* Tex. Att'y Gen. Op. Nos. JM-942 (1988) at 6-7; H-120 (1973) at 3; Tex. Att'y Gen. LA-119 (1977) at 2, LA-9 (1973) at 2. Accordingly, this office has stated that the legislature constitutionally could establish a statutory program to guarantee student loans if the legislature finds that the program will accomplish a public purpose and includes "sufficient controls to assure that the program would actually serve that public purpose." Tex. Att'y Gen. LA-119 (1977) at 2. Without such controls, the state cannot ensure that it will receive "adequate consideration or benefit for the services provided to private parties," such as the students whose loans are guaranteed. *Id.*

## II. Analysis

Without determining whether any particular agreement between the Commission and the federal government to operate a vending facility lends the state's credit for the purposes of article III, section 50 of the Texas Constitution by requiring the state to assume liability for performing the contract, we conclude that, to the extent that it does, the legislature has determined that it accomplishes a public purpose. Chapter 94 of the Human Resources Code, requiring that only a Commission-licensed person may operate a vending facility on state property, was adopted in 1965. *See* Act of May 10, 1965, 59th Leg., R.S., ch. 227, 1965 Tex. Gen. Laws 445, 445-50. Its forerunner, adopted in 1947, *see id.* § 13, 1965 Tex. Gen. Laws 445, 450 (repealing 1947 act); Act of Mar. 12, 1947, 50th Leg., R.S., ch. 47, 1947 Tex. Gen. Laws 62, 62-63, declared the purpose of enabling blind persons to make a living:

> That for the purpose of providing blind persons with remunerative employment, enlarging the economic opportunities of the blind, and for stimulating the blind to greater efforts in striving to

> make themselves self-supporting, blind persons under the provisions of this Act shall be authorized to operate vending stands on any State property, or State[-]controlled property where, in the discretion of the head of the department or agency in charge of its maintenance, vending stands may be properly and satisfactorily operated.

*Id.* § 1, 1947 Tex. Gen. Laws 62, 62; *cf. id.* § 7, 1947 Tex. Gen. Laws 62, 63 ("The fact that a large number of State-owned or leased property is not being made available for blind persons to operate vending stands in order to earn a living in this State creates an emergency . . . ."). The state's assumption of liability under the contract as required by the Randolph-Sheppard Act helps implement the public purpose of providing employment for blind citizens. Furthermore, although we find nothing in the legislative history regarding the adequacy of controls placed on the arrangements with blind vendors, we presume that the Commission has adequate controls in place to ensure that the program accomplishes its public purpose. *See* 40 TEX. ADMIN. CODE § 167.1 (2001) (authorizing business enterprises program to provide training and management supervision assistance to an eligible blind vendor).

## S U M M A R Y

To the extent that the Texas Commission for the Blind lends the state's credit in making arrangements under the Randolph-Sheppard Act, 20 U.S.C. ch. 6A (1994 & Supp. V 1999), with the federal government to operate vending facilities on federal property or in licensing blind vendors to operate the vending facilities, the loan of credit has been found to accomplish the public purpose of providing economic opportunity to blind persons. Assuming that such an arrangement is adequately controlled to ensure that the public purpose is accomplished, it does not violate article III, section 50 of the Texas Constitution.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

HOWARD G. BALDWIN, JR.
First Assistant Attorney General

NANCY FULLER
Deputy Attorney General - General Counsel

SUSAN DENMON GUSKY
Chair, Opinion Committee

Kymberly K. Oltrogge
Assistant Attorney General, Opinion Committee