![Seal of the Attorney General of Texas]

# ATTORNEY GENERAL OF TEXAS

## GREG ABBOTT

April 15, 2004

Mr. Terrell I. Murphy, Commissioner
Texas Department of Assistive and
   Rehabilitative Services
4900 North Lamar Boulevard
Austin, Texas 78751-2399

Opinion No. GA-0180

Re: Whether the Texas Commission for the Blind may impose costs for providing information to its licensees under the Federal Randolph-Sheppard Act, 20 United States Code section 107 (RQ-0134-GA)

Dear Commissioner Murphy:

You ask whether the Texas Commission for the Blind may impose costs for providing information to its licensees under the Federal Randolph-Sheppard Act.[1]

## I.    Background

The Randolph-Sheppard Act (the "Act") was enacted in 1936 to provide blind persons with remunerative employment and expanded economic opportunities by giving them priority to operate vending facilities on federal property. *See* 20 U.S.C. § 107(a) (2000); *see NISH v. Cohen*, 247 F.3d 197, 200 (4th Cir. 2001). The Act was amended in 1974, "effectively establishing a cooperative federal-state program that gives contracting priority to blind persons operating vending facilities on federal property." *Id.* at 200. The Texas Commission for the Blind (the "Commission") is specifically authorized by Texas law "to administer the Business Enterprises Program in accordance with the provisions of the Randolph-Sheppard Act." TEX. HUM. RES. CODE ANN. § 94.016(a) (Vernon Supp. 2004); *see also Automated Communication Sys. v. United States*, 49 Fed. Cl. 570, 572, n.1 (Fed. Cl. 2001). "[T]he Commission is authorized by law to contract with the federal government to operate a vending facility on federal property, by the terms of which the Commission licenses a blind vendor to operate the vending facility." Tex. Att'y Gen. Op. No. JC-0489 (2002) at 4; *see also* Tex. Att'y Gen. Op. No. O-2070 (1940) at 2-3.

Section 107b-1 of the Act provides:

---

[1]*See* Letter from Terrell I. Murphy, Executive Director, Texas Commission for the Blind, to Honorable Greg Abbott, Texas Attorney General (Nov. 6, 2003) (on file with the Opinion Committee, *also available at* http://www.oag.state.tx.us) [hereinafter Request Letter]. Formerly the Texas Commission for the Blind, the Texas Department of Assistive and Rehabilitative Services began operations on March 1, 2004. *See* Act of June 1, 2003, 78th Leg., R.S., ch. 198, §§ 1.01, 1.26, 2003 Tex. Gen. Laws 611, 612, 641.

> In addition to other requirements imposed in this title and in this chapter upon State licensing agencies, such agencies shall—
>
> > (1) provide to each blind licensee access to all relevant financial data, including quarterly and annual financial reports, on the operation of the State vending facility program.

20 U.S.C. § 107b-1 (2000). The federal administrative regulations implementing this portion of the Act state, in relevant part:

> **Sec. 395.12 Access to program and financial information.**
>
> Each blind vendor under this part shall be provided access to all financial data of the State licensing agency relevant to the operation of the State vending facility program, including quarterly and annual financial reports, provided that such disclosure does not violate applicable Federal or State laws pertaining to the disclosure of confidential information. Insofar as practicable, such data shall be made available in braille or recorded tape. At the request of a blind vendor State licensing agency staff shall arrange a convenient time to assist in the interpretation of such financial data.

34 C.F.R. § 395.12 (2003). You suggest that the above-referenced statute and regulation should be read in tandem with the cost provisions of the Texas Public Information Act (the "PIA"), and thus permit the Commission to assess costs for furnishing the information required by section 395.12. *See* Request Letter, *supra* note 1, at 2.

The PIA, chapter 552 of the Government Code, provides that "[a]n officer for public information of a governmental body shall promptly produce public information for inspection, duplication, or both on application by any person to the officer." TEX. GOV'T CODE ANN. § 552.221(a) (Vernon 2004). "Public information" is defined as "information that is collected, assembled, or maintained under a law or ordinance or in connection with the transaction of official business: (1) by a governmental body; or (2) for a governmental body and the governmental body owns the information or has a right of access to it." *Id.* § 552.002(a)(1)-(2). The Texas Commission for the Blind is clearly a "governmental body" under the PIA. *See* TEX. HUM. RES. CODE ANN. § 91.011(a) (Vernon 2001).

Subchapter F of chapter 552 of the Government Code governs the cost provisions of the PIA. Section 552.261 declares that "[t]he charge for providing a copy of public information shall be an amount that reasonably includes all costs related to reproducing the public information, including costs of materials, labor, and overhead." TEX. GOV'T CODE ANN. § 552.261(a) (Vernon 2004). Section 552.262 requires the General Services Commission to "adopt rules for use by each governmental body in determining charges for providing copies of public information under this subchapter and in determining the charge, deposit, or bond required for making public information

that exists in a paper record available for inspection as authorized by Sections 552.271(c) and (d)." *Id.* § 552.262(a). If a requestor does not seek a copy of public information, "a charge may not be imposed for making available for inspection any public information that exists in a paper record, except as provided by this section." *Id.* § 552.271(a). Section 552.272 provides that no charge may be imposed "[i]n response to a request to inspect information that exists in an electronic medium and that is not available directly on-line to the requestor . . . . unless complying with the request will require programming or manipulation of data." *Id.* § 552.272(a). If information in an electronic form "requires processing, programming, or manipulation before it can be electronically copied, a governmental body may impose charges in accordance with this subchapter." *Id.* § 552.272(c). You suggest that, because "[t]he provision of [the requested] reports requires programming and manipulation of data at some expense to the Commission," the Commission should be permitted to assess the costs thereof to its licensees under subchapter F of chapter 552 of the Government Code. Request Letter, *supra* note 1, at 2.

## II.    Analysis

The provisions of the Act relating to access to information do not grant a right of *public* access to the information described therein. Rather, they merely require that blind vendors, *i.e.*, licensees of the Commission, have access to that information. By contrast, the PIA is generally concerned with *public* access to information held by a governmental body. *See* TEX. GOV'T CODE ANN. §§ 552.021, .221(a) (Vernon 2004). The PIA does contain a number of special rights of access.[2] In addition, other Texas statutes furnish a special right of access to particular information.[3] The Act also provides a special right of access to a specific class of individuals: blind vendors. While the PIA and other Texas statutes contain a number of special rights of access, the relevant provisions of the Act, a federal law, is not among them. In our opinion, the cost provisions of the PIA may not be grafted onto the access requirements of the Act.

In the first place, neither the Act nor the regulations promulgated thereunder imposes a charge for access to "relevant financial data." Second, the regulations recognize, to a very limited extent, the existence of state public information laws. Specifically, they make the requisite information available to blind vendors, "provided that such disclosure does not violate applicable Federal or State laws pertaining to the disclosure of confidential information." 34 C.F.R. § 395.12 (2003). The PIA is not such a law. The federal regulation's recognition that one aspect of state disclosure laws must be taken into account implies that other aspects of those laws, such as cost provisions, are not applicable to information furnished to blind vendors under the Act.

Furthermore, unlike the PIA, the regulations require that "[i]nsofar as practicable . . . [financial] data shall be made available in braille or recorded tape." *Id.* More significantly, the

---

[2]These include information for legislative use, TEX. GOV'T CODE ANN. § 552.008 (Vernon 2004); information about the person requesting the information, *id.* § 552.023; information in personnel files, *id.* § 552.102(a); and information in a student or educational record, *id.* § 552.114.

[3]*See, e.g.*, TEX. OCC. CODE ANN. § 901.160 (Vernon 2004) (information about licensees held by the Texas State Board of Public Accountancy); *id.* ch. 159 (access to medical records).

Commission is directed, "[a]t the request of a blind vendor," to "arrange a convenient time to assist in the interpretation of such financial data." *Id.* By contrast, the PIA imposes no requirement on a governmental body to "interpret" information that it discloses to a requestor. Indeed, the PIA does not contemplate that a governmental body shall prepare new information in response to a request. *See A & T Consultants v. Sharp*, 904 S.W.2d 668, 676 (Tex. 1995). Nor does the PIA require a governmental body to prepare answers to questions or to do legal research. *See* Tex. Att'y Gen. ORD-568 (1990) at 8 (considering request for federal and state laws and regulations), ORD-555 (1990) at 1-2 (considering request for answers to questions).

In sum, the Act and the regulations promulgated thereunder are not public disclosure laws. They require *access to* and *interpretation of* particular financial data to a limited class of individuals. They bear little or no relation to the Texas PIA. Because neither the Act nor its regulations imposes costs for access to the information that must be disclosed to blind vendors, we decline to import the cost provisions of the PIA into the federal statute and regulations. Thus, we conclude that the Texas Commission for the Blind may not impose costs for providing information to its licensees under the Federal Randolph-Sheppard Act.

## S U M M A R Y

The Texas Commission for the Blind may not impose costs for providing information to its licensees under the Federal Randolph-Sheppard Act.

Yours very truly,

GREG ABBOTT
Attorney General of Texas

BARRY R. MCBEE
First Assistant Attorney General

DON R. WILLETT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Rick Gilpin
Assistant Attorney General, Opinion Committee