**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 19-1452**

STATE OF KANSAS, BY AND THROUGH THE KANSAS DEPARTMENT
FOR CHILDREN AND FAMILIES,

Intervenor - Appellant,

v.

SOURCEAMERICA; LAKEVIEW CENTER, INC.,

Plaintiffs - Appellees,

and

UNITED STATES DEPARTMENT OF EDUCATION; UNITED STATES
DEPARTMENT OF THE ARMY; UNITED STATES DEPARTMENT OF
DEFENSE; BETSY DEVOS, in her official capacity as Secretary of Education;
RYAN D. MCCARTHY, in his official capacity as Secretary of the Army; MARK
T. ESPER, in his official capacity as Secretary of Defense,

Defendants – Appellees.

-------------------------------------------------------------------

NATIONAL FEDERATION OF THE BLIND; NATIONAL COUNSEL OF
STATE AGENCIES FOR THE BLIND, INC.,

Amici Supporting Appellant.

**No. 19-1514**

SOURCEAMERICA; LAKEVIEW CENTER, INC.,

        Plaintiffs - Appellees,

STATE OF KANSAS, BY AND THROUGH THE KANSAS DEPARTMENT FOR CHILDREN AND FAMILIES,

        Intervenor - Appellee

        v.

UNITED STATES DEPARTMENT OF EDUCATION; UNITED STATES DEPARTMENT OF THE ARMY; UNITED STATES DEPARTMENT OF DEFENSE; BETSY DEVOS, in her official capacity as Secretary of Education; RYAN D. MCCARTHY, in his official capacity as Secretary of the Army; MARK T. ESPER, in his official capacity as Secretary of Defense,

        Defendants - Appellants,

------------------------------------------------------------------

NATIONAL FEDERATION OF THE BLIND; NATIONAL COUNCIL OF STATE AGENCIES FOR THE BLIND, INC.,

        Amici Supporting Appellee.

Appeals from the United States District Court for the Eastern District of Virginia, at Alexandria. T.S. Ellis, III, Senior District Judge. (1:17-cv-00893-TSE-IDD)

Argued: May 28, 2020              Decided: September 22, 2020

Before DIAZ and THACKER, Circuit Judges, and TRAXLER, Senior Circuit Judge.

Affirmed in part, vacated in part, and remanded by unpublished per curiam opinion.

**ARGUED:** Peter A. Nolan, WINSTEAD PC, Austin, Texas, for Appellant/Cross-Appellee. Laura E. Myron, UNITED STATES DEPARTMENT OF JUSTICE,

Washington, D.C.; Craig Alan Holman, ARNOLD & PORTER KAYE SCHOLER LLP, Washington, D.C., for Appellees/Cross-Appellants. **ON BRIEF:** Jonathan R. Mook, Jayna Genti, DIMUROGINSBERG, PC, Alexandria, Virginia; Andrew J. Schumacher, WINSTEAD PC, Austin, Texas, for Appellant/Cross-Appellee. Sonia Tabriz, ARNOLD & PORTER KAYE SCHOLER LLP, Washington, D.C., for Appellees/Cross-Appellants. Andrew D. Freeman, Emily L. Levenson, Brooke E. Lierman, BROWN, GOLDSTEIN & LEVY, LLP, Baltimore, Maryland, for Amici National Federation of the Blind and National Council of State Agencies for the Blind.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

These cross-appeals are from the district court's decision to overturn, in part, a Department of Education ("DOE") arbitration panel's award in favor of the State of Kansas ("Kansas"), by and through the Kansas Department for Children and Families ("Kansas DCF"). The DOE arbitration panel determined that the Department of the Army ("Army") violated the Randolph-Sheppard Vending Facility Act of 1936, 20 U.S.C. §§ 107–107f ("RSA"), which accords preference to vendors employing blind persons in the procurement of government contracts in "the operation of vending facilities on Federal property." 20 U.S.C. § 107(b). Specifically, the arbitration panel decided the Army violated the RSA in designating a dining facility contract for its Fort Riley, Kansas military cafeteria to Lakeview Center, Inc. ("Lakeview") and SourceAmerica, formerly known as the National Industries for the Severely Handicapped ("SourceAmerica"), nonprofit entities seeking to advance opportunities to the blind and persons with other severe disabilities, rather than renewing its contract with Kansas DCF, an entity with similar noble goals.

Following the arbitration award, Lakeview and SourceAmerica filed suit in the Eastern District of Virginia against the DOE and its Secretary, the Department of Defense ("DOD") and its Secretary, and the Army and its Secretary (collectively, the "Government Appellees"), challenging the arbitration award under the Administrative Procedures Act ("APA"). Lakeview and SourceAmerica claimed that Lakeview, not Kansas, was entitled to the dining facility contract at Fort Riley pursuant to a different statute, the Javits Wagner O'Day Act ("JWOD"), 41 U.S.C. §§ 8501–8506, and that Lakeview and SourceAmerica

4

were impermissibly excluded from the arbitration proceedings. Kansas intervened in the suit.

The district court granted summary judgment in part to Lakeview and SourceAmerica, in part to the Government Appellees, and in part to Kansas. The parties filed cross-appeals. As explained below, we affirm in part, vacate in part, and remand for further proceedings consistent with this opinion.

I.

This appeal arises out of the Army's procurement of a contract for certain dining support services to be performed in the dining facilities at Fort Riley. Army regulations distinguish between two types of contracts with respect to Army cafeterias or mess halls: (1) Full Food Service ("FFS") contracts, which are entered into when the contractor is or can be required to perform food preparation; and (2) Dining Facility Attendant ("DFA") contracts, which cover support functions up to, but not including, any food preparation.

A.

The Relevant Statutes

As a matter of background, we first set forth the governing rules at play in these appeals: the RSA and its counterpart statute, the JWOD.

1.

The Randolph-Sheppard Vending Facility Act

We begin our discussion with the RSA. The RSA seeks to "enlarg[e] the economic opportunities of the blind" by giving them preference in the bidding of contracts "to operate vending facilities on any Federal property." 20 U.S.C. §§ 107(a), (b). Vending facilities

include military "cafeterias." *See id.* § 107e(7); *see also NISH v. Cohen*, 247 F.3d 197, 204 (4th Cir. 2001). The RSA applies to all federal agencies, and Congress has charged the DOE with "prescrib[ing] regulations to establish a priority for the operation of cafeterias" on federal property by blind vendors. 20 U.S.C. § 107d–3(e); *see also id.* §§ 107(b), 107a, 107d–1. In addition, the RSA requires that "[a]ny limitation on the placement or operation of a vending facility based on a finding that such placement or operation would adversely affect the interests of the United States shall be fully justified in writing to the Secretary [of DOE], who shall determine whether such limitation is justified." *Id.* § 107(b) (the "RSA Review Requirement").

The RSA's priority bidding procedures are as follows. In each state, the DOE designates a State Licensing Agency ("SLA") to issue licenses to blind vendors for the "operation of vending facilities" on federal property pursuant to the RSA. 20 U.S.C. § 107a(a)(5). Federal agencies procure the vending facility services, either directly through the SLA or by soliciting competitive bids for contracts in conjunction with the SLA. *See* 34 C.F.R. §§ 395.33(b), (d).

According to the RSA regulations, federal agencies may solicit offers to provide vending services, using criteria such as "sanitation practices, personnel, staffing, menu pricing and portion sizes, menu variety, [and] budget and accounting practices." 34 C.F.R. § 395.33(b). The SLA may submit a bid on behalf of a blind vendor if that vendor can provide services "at comparable cost and of comparable high quality as that available from other providers of cafeteria services." *Id.* If the SLA bid is "within a competitive range and has been ranked among those proposals which have a reasonable chance of being

6

selected for final award," the federal agency procuring the vending services must consult the DOE. *Id.* Then, if the DOE concludes that the "operation can be provided at a reasonable cost" and with food of a comparatively "high quality," the DOE "shall [] afford[]" priority to the blind vendor to operate and manage the cafeteria. *Id.* § 395.33(a). These operations "shall be expected to provide maximum employment opportunities to blind vendors to the greatest extent possible." *Id.* Upon the expiration of the blind vendor's contract, the federal agency may either renew the contract with the SLA or reinitiate the bidding process. *See id.* § 395.33(d).

The RSA provides for arbitration when disputes arise in the procurement process. *See* 20 U.S.C. § 107d–1. An SLA may file a complaint with the DOE alleging a violation of the RSA. *See id.* § 107d–1(b). The DOE then "convene[s] a panel to arbitrate the dispute . . . and the decision of such panel shall be final and binding on the parties." *Id.* The arbitration panel's decision is "subject to appeal and review as a final agency action" pursuant to the APA. *Id.* § 107d–2(a).

2.

The Javits Wagner O'Day Act

The JWOD is a more general procurement statute and counterpart statute to the RSA.[1] The JWOD is intended "to increase employment and training opportunities for persons who are blind *or* have other severe disabilities through the purchase of

---

[1] As set forth in the briefing herein, Congress has attempted many times to clarify the differences between the RSA and JWOD. However, we find this discussion unnecessary to the disposition of this case.

7

commodities and services from qualified nonprofit agencies employing [such] persons." 41 C.F.R. § 51–1.1(a) (emphasis supplied). Like the RSA, the JWOD is applicable to dining facility contracts for military mess halls. *See Cohen*, 247 F.3d at 205. But, unlike the RSA, which "deals explicitly with . . . the operation of cafeterias," the JWOD is a "general procurement statute." *Id*.

Whereas the DOE promulgates rules pursuant to the RSA, the AbilityOne Commission (the "Commission")[2] is tasked with implementing the JWOD and promulgating its regulations. *See* 41 U.S.C. §§ 8502, 8503(d). The Commission is composed of 15 members who are appointed by the President, including four nonfederal government members and 11 members from federal agencies. *See id.* § 8502(b). The Commission oversees the AbilityOne Program in order to "maintain and publish in the Federal Register a procurement list [(the "Procurement List")]," which contains products and services provided by qualified nonprofit agencies. *Id.* § 8503(a); *see also* 41 C.F.R. § 51–1.3. The federal government must procure products and services from the Procurement List at the price set by the Commission. *See* 41 U.S.C. § 8504(a).

The Commission works with two "central nonprofit agenc[ies]" to administer the AbilityOne Program: the National Industries for the Blind and SourceAmerica. *See* 41 U.S.C. § 8503(c); 41 C.F.R. § 51–3.1. The former "represent[s] nonprofit agencies for the blind," while the latter "represent[s] nonprofit agencies employing persons with other

---

[2] Otherwise known in the statute as the "Committee for Purchase from People Who Are Blind or Severely Disabled."

8

severe disabilities." 41 C.F.R. §§ 51–3.1(a), (b). The Commission tasks these central nonprofit agencies with identifying possible services to be included on the Procurement List. *See id.* § 51–3.2.

B.

Fort Riley Contracts

1.

The Kansas Full Food Services Contract

Pursuant to the RSA, on June 1, 2006, the Army awarded Kansas the Fort Riley FFS contract. According to the Army's regulations, FFS "cover[s] those activities that comprise the full operation of an [Army] dining facility," including, but not limited to, "requisitioning, receiving, storing, preparing, and serving food" as well as "related administrative, custodial, and sanitation functions." J.A. 148.[3] DFA services cover "janitorial and custodial duties within dining facilities," including "sweeping, mopping, scrubbing, trash removal, dishwashing, waxing, stripping, buffing, window washing, pot and pan cleaning, and other sanitation-related functions." *Id*. at 147–48. During the span of the 2006 Fort Riley FFS contract, Kansas DCF performed all of the activities necessary for the full operation of the Army dining facilities. This included, as set forth above, all of the activities necessary to both prepare the food and clean the facilities. Thereafter, on

---

[3] Citations to the "J.A." refer to the Joint Appendix filed by the parties in these appeals.

September 1, 2011, the Army awarded Kansas a follow-on contract, which was scheduled to expire on August 31, 2015.

2.

The Dining Facility Attendant Services Contract

On March 12, 2015, as a result of the return of military personnel from Iraq and Afghanistan to Fort Riley, the Army determined that soldiers, rather than a blind vendor, would resume food service operations in the Fort Riley dining facilities. However, because soldiers are generally prohibited from performing DFA duties, the Army (expecting that the soldiers would take over only the FFS duties) sought a new contract solely for performance of DFA services. Because it sought a DFA contract for these limited services, the Army decided the RSA did not govern the contract, reasoning those DFA services do not involve the "operation" of vending facilities. Based on this determination, on March 13, 2015, the Army informed Kansas of its intent to procure a new contract at the conclusion of the Kansas FFS contract.

On July 17, 2015, the Army proposed adding a new DFA contract for Fort Riley dining services to the Procurement List in the Federal Register, pursuant to the JWOD. The Commission ultimately did so. Following the publication of the Fort Riley DFA contract, the Commission published a proposal by Lakeview, which offered to act as the "Mandatory Source[] of Supply"[4] for the Fort Riley DFA contract, effective February 21,

_____

[4] Pursuant to 41 C.F.R. § 51–5.2(a), "mandatory sources of supply" are those nonprofit agencies designated by the Commission that supply to federal agencies "commodities and services included on the Procurement List."

10

2016. J.A. 2709. In essence, this meant that Lakeview was entitled to supply DFA services under the Fort Riley contract. SourceAmerica, as a central nonprofit agency designated by the Commission, facilitated the DFA contract procurement. But because Kansas DCF was not an agency designated by the Commission pursuant to the JWOD, Kansas was not able to compete for the new DFA contract for janitorial and custodial services.

## C.

### Arbitration

### 1.

Before the expiration of its contract with the Army, on May 7, 2015, and before the DFA contract was added to the Procurement List, Kansas filed a request for arbitration pursuant to the RSA. In the request, Kansas alleged that Fort Riley was "preparing to request that the new contract for DFA services be added to the [] AbilityOne Commission Procurement List," which "is a violation of the [RSA]." J.A. 157. It asked that "Fort Riley continue to recognize the priority of the [RSA] and cease its plans to place th[e DFA contract] on the P[rocurement] L[ist]." *Id.* at 158.[5]

On October 15, 2016, after the DFA contract had been added to the Procurement List and Lakeview had been named the Mandatory Source of Supply, the DOE convened

---

[5] Additionally, on July 22, 2015, Kansas filed suit in the United States District Court for the District of Kansas, seeking to enjoin the Army from awarding the new DFA contract during the pendency of arbitration. On February 26, 2016, the district court granted the preliminary injunction. As a result of this preliminary injunction, on March 1, 2016, the Army awarded a bridge contract for DFA services to Kansas. The preliminary injunction was dissolved at the conclusion of the arbitration.

an arbitration panel to address these claims. Lakeview and SourceAmerica twice sought to intervene in the arbitration proceeding, claiming the arbitration prevented them from executing their operations, receiving payment pursuant to the Fort Riley DFA contract, and fulfilling their purpose of assisting persons with significant disabilities. The arbitration panel did not respond to the requests to intervene.

On January 10, 2017, the arbitration panel held the hearing on Kansas's claims. Despite a lack of response to their requests to intervene, Lakeview and SourceAmerica attended the hearing and sought to present testimony. However, the arbitration panel denied the request, explaining Lakeview and SourceAmerica were "not [parties] to this matter." J.A. 626.

2.

On May 9, 2017, two of the three arbitration panel members found in favor of Kansas and denied the Army's request for a new hearing. The arbitration panel majority concluded that the Army violated the RSA when it solicited the Fort Riley DFA contract. Specifically, as to the RSA, the panel majority concluded DFA services for which the Army contracted constituted a crucial piece of the entire operation of a cafeteria:

> Where the tasks to be performed by a contract for DFA services includes [sic] tasks that constitute an integral element of providing food service at a military cafeteria facility, or pertain to the operation of a cafeteria, or tasks that without which the cafeteria would not be able to function, fall within the definition included in the [RSA], and its implementing regulations, and are entitled to [RSA] priority when awarding said contract.

12

J.A. 315. The panel majority found that the Fort Riley DFA contract centers on the functioning of the cafeteria, with around the clock janitorial and sanitation related tasks:

> [The] DFA contract called for, *inter alia*, maintenance of quality control plan in support of dining facility operations; cleaning and sanitizing food service equipment and surfaces in support of dining facility operations; preparing, maintaining and cleaning dining areas to allow each diner a clean area within which to eat without delay; keeping appropriate condiments available without delay; cleaning spills, removing soiled dinnerware and bussing soiled trays within five minutes of occurrence; and bussing and replacing tray carts during meal service period and making space available for soiled trays, without diner delay 100% of the time.

*Id.* at 314.

Accordingly, the panel majority concluded that the RSA's requirement that priority be given to a blind vendor in the procurement process applied to the solicitation of the Fort Riley DFA contract. Additionally, the arbitration panel majority concluded that the Army violated the RSA Review Requirement when it failed to seek advance review by the DOE of its decision to terminate the FFS contract and replace it with the new DFA contract. One member of the arbitration panel dissented, concluding the RSA does not apply to DFA services and believed a new hearing should be granted because "the proceedings lacked fundamental fairness." J.A. 340.

D.

District Court Proceedings

1.

On August 5, 2017, Lakeview and SourceAmerica filed suit in the United States District Court for the Eastern District of Virginia against the Government Appellees,

13

seeking judicial review of the arbitration decision pursuant to the APA. Specifically,

Lakeview and SourceAmerica alleged the following claims:

- violation of the APA and the Tucker Act, 28 U.S.C. § 1491(b)(1),[6] alleging the arbitration panel lacked jurisdiction to issue its decision (Count I);

- violation of the APA, alleging the arbitration panel decision was arbitrary, capricious, and not in accordance with the JWOD (Count II);

- violation of the APA, alleging the arbitration panel decision was arbitrary, capricious, and not in accordance with the RSA (Count III);

- violation of Section 555(b) of the APA, alleging the arbitration panel failed to permit Lakeview and SourceAmerica to intervene, testify, and participate in the arbitration (Count IV);

- violation of procedural due process pursuant to the Fifth Amendment of the Constitution, alleging a property interest in the Fort Riley DFA contract (Count V);

- violation of the nondelegation doctrine[7], alleging the RSA's arbitration provisions vest private citizens (the

---

[6] Section 1491(b)(1) provides:

> Both the Unites States Court of Federal Claims and the district courts of the United States shall have jurisdiction [1] to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement. . . [and] [2] to entertain such an action without regard to whether suit is instituted before or after the contract is awarded.

[7] "The nondelegation doctrine bars Congress from transferring its legislative power to another branch of Government." *Gundy v. United States*, 139 S. Ct. 2116, 2121 (2019)

arbitration panel members) with regulatory power in the interpretation of the applicability of the RSA (Count VI); and

- specifically against DOD, violation of the APA, alleging it unlawfully withheld and unreasonably delayed promulgation of a joint policy statement on this matter (Count VII).

2.

Opinion Letter

During the pendency of the district court lawsuit, on October 17, 2017, the Secretary of DOE met with former member of the United States House of Representatives Pete Sessions regarding the meaning of "operation of a vending facility" in the RSA. Following that meeting, the Secretary sent a follow-up letter to Representative Sessions on March 5, 2018 (the "Opinion Letter"). The Opinion Letter stated, in part:

> [DOD] regulations distinguish between [FFS] and [DFA] contracts. Under [FFS] contracts, the vendor manages the entire operation of the cafeteria, including food preparation. Under [DFA] contracts, the vendor manages those aspects of the cafeteria besides food preparation because military personnel prepare the food.

> [DOE] believes that the [RSA] priority applies to both types of cafeteria contracts. The term "operation" in the [RSA] means that the vendor must "manage" or "direct the working of" the cafeteria. Oxford English Dictionary (2d ed. 1989). Nothing in the [RSA] requires a vendor to participate in every activity of the cafeteria in order to "manage" or "direct the working of" the cafeteria. Where a vendor is responsible for all the

_____

(plurality); *see also id.* at 2123 (quoting U.S. Const. art. I, § 1 ("All legislative Powers herein granted shall be vested in a Congress of the United States." (alteration omitted))). This doctrine "is rooted in the principle of separation of powers that underlies our tripartite system of Government." *Mistretta v. United States*, 488 U.S. 361, 371 (1989).

15

functions of the cafeteria aside from those performed by military personnel -- such as supervisory, administrative, and sanitation-related function -- the vendor can be said to "manage" the cafeteria, even if the vendor is not preparing the food. Indeed, the cafeteria would not be able to operate without the vendor performing those functions.

Some contracts may be limited to discrete tasks so as not to entail overall "operation" of the cafeteria, but that characterization would not apply to all [DFA] contracts.

J.A. 2261. Of note, the Opinion Letter cites the arbitration panel's decision in this case. *See id.* ("An arbitration panel recently convened to consider a dispute under the [RSA] concerning a cafeteria at Fort Riley, Kansas."). But the Opinion Letter does not make any conclusion regarding the arbitration panel's decision.

3.

Intervention of Kansas

On May 21, 2018, Kansas moved to intervene in the district court lawsuit in order to defend the arbitration decision and attached a copy of the Opinion Letter to its motion. The Opinion Letter was not a part of the complaint or the administrative record. The next day, the district court granted Kansas's motion to intervene.

4.

District Court's Decision

Following the submission of each party's motion for summary judgment, on March 15, 2019, the district court granted in part and denied in part each of the parties' motions for summary judgment. Specifically, the district court:

- entered judgment in favor of Kansas as to Count II (violation of the APA, alleging the arbitration panel

16

decision was arbitrary, capricious, and not in accordance with JWOD) and Count V (violation of procedural due process pursuant to the Fifth Amendment, alleging a property interest in the Fort Riley DFA contract);

- entered judgment in favor of Lakeview and SourceAmerica as to Count III (violation of the APA, alleging the arbitration panel decision was arbitrary, capricious, and not in accordance with RSA) and Count IV (violation of Section 555(b) of the APA, alleging the arbitration panel failed to permit Lakeview and SourceAmerica to intervene, testify, and participate in the arbitration);

- vacated the arbitration panel's findings that:

   o the Fort Riley DFA contract is subject to the RSA's preference; and

   o the Army violated the RSA when it failed to apply the RSA's preference to the Fort Riley DFA contract; and

- affirmed the arbitration panel decision finding that the Army violated the RSA Review Requirement.

*See* J.A. 3014.[8]

_____

[8] Counts I, VI, and VII were disposed of as follows:  Appellees withdrew Count I (violation of the APA and the Tucker Act, 28 U.S.C. § 1491(b)(1), alleging the arbitration panel lacked jurisdiction to issue its decision); and the district court dismissed Counts VI (alleging the RSA's arbitration provisions vest private citizens -- the arbitration panel members -- with regulatory power in the interpretation of the applicability of the RSA), and VII (violation of the APA against DOD) upon motion by the Government Appellees. None of these Counts are at play in this appeal.

Statutory Standing

In the district court, the Government Appellees' contended that Lakeview and SourceAmerica lacked statutory standing.

The APA provides, "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. Those who are injured by agency action may seek judicial review of that action where "the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Ass'n of Data Processing Serv. Org., Inc. v. Camp*, 397 U.S. 150, 153 (1990). The Government Appellees argued below that Lakeview and SourceAmerica could not satisfy this zone of interests test and, therefore, lacked standing to challenge the arbitration decision.

The district court disagreed, first determining Lakeview and SourceAmerica were within the zone of interests to be protected by the RSA, as they had strong interests in "providing blind persons with remunerative employment [and] enlarging the economic opportunities of the blind," both reflecting the purposes of the RSA. J.A. 2990 (alteration in original) (internal quotation marks omitted). Next, the district court determined the Government Appellees had failed to prove that the RSA precludes judicial review because it was not fairly discernable that Congress intended to *preclude* such review under the RSA. Last, the district court determined another remedy was not available to Lakeview and SourceAmerica because after arbitration, Lakeview suffered the denial of "a contract that

it was otherwise entitled to receive," and "there is no guarantee that it will be able to seek redress for that harm through a bid protest action." *Id.* at 2994.

For these reasons, the district court concluded Lakeview and SourceAmerica possessed statutory standing to seek judicial review of the arbitration panel decision.

b.

Violation of Section 555(b) of the APA

The district court also concluded the arbitration panel violated the APA in denying Lakeview's and SourceAmerica's participation in the arbitration hearing. The APA provides, "So far as the orderly conduct of public business permits, an *interested person* may appear before an agency or its responsible employees for the presentation, adjustment, or determination of an issue, request or controversy in a proceeding." 5 U.S.C. § 555(b) (emphasis supplied). The district court determined Lakeview and SourceAmerica were "interested persons" pursuant to this statute, and that the arbitration panel's failure to permit their participation was prejudicial and not harmless.

c.

Meaning of "Operation of Vending Facilities"

The district court concluded that the arbitration panel erred when it found the RSA applies to the Fort Riley DFA contract because the district court concluded the contract is for "ancillary services," J.A. 2995, and those services do not constitute "operation of vending facilities," 20 U.S.C. § 107(b). Specifically, the district court reasoned "operation" means that "the vendor must exercise control or management over the

19

functioning of the vending facility as a whole, not merely exercise control or management over tasks performed in support of the facility's functioning." J.A. 2996.

In so concluding, the district court declined to give the Secretary's Opinion Letter any deference or consideration, based on the fact that the DOE itself disavowed the Opinion Letter as either its general position or its litigation position on the proper interpretation of RSA with respect to the Fort Riley DFA contract. The district court further explained "[Kansas] cannot credibly argue that a letter written by the Secretary [of DOE] to a congressman constitutes an agency interpretation promulgated in the exercise of the authority to make rules carrying the force of law." J.A. 3000 n.20.

d.

RSA Review Requirement

Although it concluded the RSA does not apply to the Fort Riley DFA contract, the district court nonetheless determined the arbitration panel correctly concluded that the Army failed to comply with the RSA Review Requirement, which requires the DOE's approval for any "limitation on the placement or operation of a vending facility." 20 U.S.C. § 107(b). The district court acknowledged that "[u]nder the Army's plan, the operation of Fort Riley dining facilities was to be limited in that the facilities would not be operated by a vendor at all," and "[r]emoving a vendor entirely is the most basic limitation on the operation of vending facilities of all." J.A. 3002. Relying on the legislative history, the district court noted the Senate added the RSA Review Requirement because it was concerned that "federal agencies were not doing all they could to ensure blind vendors continued to operate dining facilities." *Id.* Therefore, the district court concluded "[the

20

Army's] decision to discontinue the operation of its vending facilities by a vendor triggered the RSA Review Requirement" because such decision was "the exact scenario that motivated the Senate to add the review provision." *Id.*

e.

Applicability of the JWOD

The district court determined the applicability of JWOD to the Fort Riley DFA contract was not at issue because, as the agency tasked with implementing the RSA, the DOE arbitration panel "did not have authority to make any findings regarding the JWOD or its applicability to the Fort Riley DFA contract"; rather, it was only authorized to determine whether a federal agency violated the RSA or its regulations. J.A. 3005.

f.

Proper Remedy

When all was said and done, the district court determined the proper remedy in this case was neither equitable relief nor remand to the arbitration panel. Instead, the district court affirmed the arbitration panel's finding that the Army violated the RSA Review Requirement, but it vacated the arbitration panel's findings that "(i) the Fort Riley DFA contract is subject to the RSA's preference, [and] (ii) [the Army] violated the RSA when it failed to apply the RSA's preference to the Fort Riley DFA contract." J.A. 3012. Accordingly, the district court determined the Army was "free to procure a contract for the Fort Riley DFA services consistent with [its] Opinion." *Id.*

These cross appeals followed.

21

## II.

## The Instant Appeals

In the instant appeals, Kansas appeals the district court's summary judgment decision as to the statutory standing of Lakeview and SourceAmerica, and its decision that the RSA does not apply to the Fort Riley DFA contract. The Government Appellees cross-appeal the district court's summary judgment decision as to the application of the RSA Review Requirement to the Fort Riley DFA contract.

We review a grant of summary judgment de novo. *See N. Carolina Growers' Ass'n, Inc. v. United Farm Workers*, 702 F.3d 755, 763 (4th Cir. 2012). "Summary judgment is appropriate when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law." *Id.* (citations omitted). Particularly in APA actions, "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *See Camp v. Pitts*, 411 U.S. 138, 142 (1973) (per curiam). Accordingly, based on the administrative record, a reviewing court must uphold an agency's interpretation of a statute if it is "in accordance with law," which requires a court to "decide all relevant questions of law" and "interpret constitutional and statutory provisions." 5 U.S.C. § 706(2)(A).

## III.

## A.

## Standing

We first address Kansas's argument in the main appeal that Lakeview and SourceAmerica lack standing pursuant to the RSA to appeal the arbitration panel's award

because: (1) "the interest sought to be protected by [Lakeview and SourceAmerica] are not within the 'zone of interest' to be protected by the RSA"; (2) "the RSA limits participation in the arbitration to the SLA and the federal agency in charge of the military dining facility"; and (3) Lakeview and SourceAmerica "had an adequate remedy at law . . . [which] was to . . . file a declaratory judgment action challenging the application of the RSA in awarding the Fort Riley Dining Facility Contract to [Kansas]." Appellant/Cross-Appellee Kansas's Br. 12.

1.

Statutory standing is effectively a jurisdictional inquiry concerning whether a party may pursue a cause of action pursuant to a specific statute. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1387 and n.4 (2014) (explaining the label "statutory standing" rather than "prudential standing" "correctly places the focus on the statute"). But "the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, *i.e.*, the court's statutory or constitutional *power* to adjudicate the case." *Id.* at n.4 (emphasis in original) (quoting *Verizon Md. Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 642–43 (2002) (internal quotation marks omitted)). Accordingly, questions concerning statutory standing -- unlike those concerning constitutional standing -- are waivable. *See Del Webb Cmtys., Inc. v. Carlson*, 817 F.3d 867, 872 (4th Cir. 2016); *see also Manning v. Caldwell*, 930 F.3d 265, 271 n.6 (4th Cir. 2019) (en banc) (Waiver is "a party's relinquishment of rights before a *district court*." (emphasis in original) (internal quotation marks omitted)).

2.

Lakeview and SourceAmerica claim that Kansas waived its statutory standing argument by not raising it in the district court, and because the Government Appellees -- the only party to have raised the statutory standing argument in the district court -- have abandoned the issue by not raising it on appeal.

In turn, Kansas claims it raised a statutory standing argument below in opposition to Lakeview and SourceAmerica's motion for summary judgment. However, according to the Lakeview and SourceAmerica, Kansas made only passing reference to statutory standing before the district court, and it did so in opposition to their standing to intervene in an RSA arbitration pursuant to Section 555(b) of the APA, rather than in opposition to summary judgment. Moreover, Lakeview and SourceAmerica point out that Kansas did not itself appeal the district court's decision as to the Section 555(b) claim.

Indeed, in support of its statutory standing claim before us, Kansas cites to the Government Appellees' memorandum in opposition to summary judgment, rather than to its own memorandum. There, the Government Appellees presented the following three statutory standing arguments: (1) Lakeview and SourceAmerica "do not fall within the zone of interests arguably protected by the [RSA]," J.A. 2850; (2) "[the RSA] arbitration scheme permits only [SLAs] to seek judicial review of arbitration decisions," *id.* at 2852; and, (3) specifically with regard to Lakeview, it "cannot seek judicial review under the APA because there is another adequate remedy in the form of a bid protest action." *Id.* at 2854. As noted, these are the same arguments Kansas now co-opts as its own on appeal.

24

At oral argument, Kansas acknowledged that the memorandum it now asserts contains its standing argument is not in the record before us, but it directed our attention to such memorandum on the district court docket. Following oral argument, Kansas filed a letter pursuant to Rule 28 of the Federal Rules of Appellate Procedure,[9] wherein it claimed its standing argument before the district court was contained in its memorandum in response to Lakeview and SourceAmerica's motion for summary judgment.

But this claim does not hold up. Just as Lakeview and SourceAmerica indicated, in that memorandum, Kansas merely referenced standing in passing concerning their standing to intervene in the RSA arbitration pursuant to section 555(b) of the APA. *See* Intervenor's Br. in Support of Resp. to Pl.'s Mot. for Sum. J. and Intervenor's Mot. for Sum. J. at 25, *SouceAmerica v. U.S. Dep't of Educ.*, No. 1:17-cv-893 (E.D. Va. Aug. 5, 2017; filed Sept. 10, 2018), ECF No. 69 ("Defendants did not violate APA Section 555(b) by preventing [Lakeview and SourceAmerica] from participating in the arbitration proceeding because they lacked standing to intervene in a[n] RSA arbitration.").

---

[9] Federal Rule of Appellate Procedure 28(j) provides,

> If pertinent and significant authorities come to a party's attention . . . after oral argument but before decision[,] a party may promptly advise the circuit clerk by letter, with a copy to all other parties, setting forth the citations. The letter must state the reasons for the supplemental citations, referring . . . to a point argued orally.

3.

In our review of the record, it is clear Kansas did not present its claimed statutory standing argument before the district court. "When a party in a civil case fails to raise an argument in the lower court and instead raises it for the first time before us, we may reverse only if the newly raised argument establishes 'fundamental error' or a denial of fundamental justice." *ACA Fin. Guar. Corp. v. City of Buena Vista, Virginia*, 917 F.3d 206, 214 n.4 (4th Cir. 2019); *see also In re Under Seal*, 749 F.3d 276, 285 (4th Cir. 2014). This is not such a case. The Government Appellees were the only parties to present the statutory standing arguments below, and they have abandoned their arguments in this regard on appeal. Kansas cannot now latch onto these abandoned arguments in order to remediate its own failure to present these arguments in the first instance. Thus, we hold that Kansas has waived its argument as to statutory standing, and we decline to address it.

B.

RSA Review Requirement

In the cross-appeal filed by the Government Appellees, we are tasked with considering whether the Army's decision to eliminate the contract operated by its blind vendor triggered the RSA Review Requirement. Although it determined that the RSA preference accorded to blind vendors did not apply to the Fort Riley DFA contract, the district court concluded, nonetheless, that the RSA Review Requirement was invoked when the Army decided "to terminate the operation of vending facilities" by Kansas. J.A. 3001. Thus, the Army was "obligated . . . to justify its decision . . . to the Secretary [of DOE] in writing," and it "failed to comply with this requirement." *Id.* We agree with the district

court's decision on the RSA Review Requirement, thus rendering unnecessary a decision on the remaining issues in the main appeal.

## 1.

Lakeview, SourceAmerica, and the Government Appellees argue that the Army's decision to redeploy troops to staff dining facilities at Fort Riley and to secure a DFA contract is not subject to the RSA Review Requirement. The Government Appellees contend that the RSA Review Requirement "does not, by its terms, apply to changes in the use of military personnel that have a downstream effect of eliminating an opportunity for an RSA vendor." Gov't Appellees/Cross-Appellants' Br. 21. They assert that, in light of the plain language of the RSA and legislative history, the RSA Review Requirement is intended "to prevent agencies from imposing direct restrictions on the placement of operation of vending facilities" rather than "indirect effect[s]" that may "narrow[] an RSA contracting opportunity." *Id*. at 40.

Kansas, in turn, maintains that the Fort Riley DFA contract included the same services provided per its FFS contract, except limited food preparation services and contingency cooks. Therefore, Kansas claims that the change from an FFS to a DFA contract is precisely the type of limitation on the services provided by blind vendors that are subject to the RSA Review Requirement.

## 2.

Our analysis of this issue is grounded in the plain language of the statute. *See Lynch v. Jackson*, 853 F.3d 116, 121 (4th Cir. 2017) ("[W]hen the statute's language is plain, the

sole function of the courts -- at least where the disposition required by the text is not absurd -- is to enforce it according to its terms.").

The plain language of Section 107(b) of the statute makes clear that the Fort Riley DFA contract is subject to the RSA Review Requirement without regard to the meaning of "operation of vending facilities." 20 U.S.C. §§ 107(a), (b). The RSA provides that "[*a*]*ny* limitation on the placement or operation of a vending facility based on a finding that such placement or operation would adversely affect the interests of the United States shall be fully justified in writing to [the Secretary of DOE], who shall determine whether such limitation is justified." *Id.* § 107(b) (emphasis supplied); *see also* 34 C.F.R. § 395.30(b). There are no qualifiers as to the type or degree of limitations. And, in accordance with the purpose of the RSA, "blind persons licensed under the provisions of this chapter shall be authorized to operate vending facilities on *any* Federal property." *Id*. § 107(a) (emphasis supplied).

The only other circuit to have considered this issue,[10] also supports the interpretation of the RSA Review Requirement as prohibiting *any* limitation on the "operation of a

---

[10] Recently, a divided panel of the Fifth Circuit concluded that a DFA contract for a military cafeteria in Texas was for the "operat[ion of] vending facilities" and thus, was subject to the RSA. *Texas Workforce Comm'n v. United States Dep't of Educ.*, --- F.3d ---, 2020 WL 5105167, at *2 (5th Cir. Aug. 31, 2020). The majority opinion did not, however, address the RSA Review Requirement, other than to say the arbitration panel did not consider it. The dissenting judge noted this fault: "I . . . would remand for the district court to determine in the first instance whether the Army was required to 'justify in writing to the Secretary' its decision to split the cafeteria work into two contracts." *Id.* at *10 (Clement, J., dissenting) (quoting 20 U.S.C. § 107(b)). As explained, we agree with the dissent's view in that case.

vending facility" unless justified by DOE. In *Minnesota Department of Jobs & Training v. Riley*, the Eighth Circuit addressed whether the Department of Veterans Affairs could charge commissions on sales from a blind vendor's vending operation. *See* 18 F.3d 606, 608 (8th Cir. 1994). The Eighth Circuit concluded that the language of Section 107(b) is clear that the RSA precludes the charging of commissions on vending sales without the approval of DOE. *See id.* at 609. Additionally, the Eighth Circuit concluded that the legislative history demonstrated Congress's "concern[] with federal agency abuses of blind vendor's operations, like forcing blind vendors to pay commissions." *Id.* (citing S. Rep. No. 93–937 (2d Sess. 1974)).

Three years later, when addressing whether the Department of Veterans Affairs could install a vending machine that would compete with the blind vendor, the Eighth Circuit relied on its prior decision in *Department of Jobs and Training*, and concluded that the RSA precluded the installation of the competing vending machine without the DOE Secretary's approval. *See Minn. Dep't of Econ. Sec. v. Riley* 107 F.3d 648, 650 (8th Cir. 1997). The Eighth Circuit explained, "No less than commission payments, competing machines would limit the blind vendor's operation. [*Department of Jobs and Training*] rules out both, unless the Secretary decides otherwise." *Id.*

Here, the Army's decision to forego the FFS contract with Kansas in favor of a DFA contract did more than just "limit" a blind vendor's operation of the vending facility; it eliminated it altogether. *Minn. Dep't of Econ. Sec.*, 107 F.3d at 650. Therefore, the Army was required to justify its actions to the Secretary of DOE, and it is undisputed that the Army did not do so.

29

3.

Accordingly, we hold that the Army's decision to forego the FFS contract with Kansas in favor of publishing a DFA contract pursuant to the JWOD -- eliminating Kansas's operation of the Fort Riley cafeteria -- invoked the RSA Review Requirement, and we affirm the cross-appeal on that ground.

C.

Because we conclude per the RSA Review Requirement that the Army was required to justify its decision with regard to the Kansas FFS contract, and because the Secretary of DOE will have the authority to accept or reject such justification, reaching the other issues in this appeal at this juncture would be premature. Indeed, our ultimate review of those issues "ultimately hinges on" the Secretary's approval (or not) of the Army's actions. *Am. Whitewater v. Tidwell*, 770 F.3d 1108, 1122 (4th Cir. 2014); *see Minn. Dep't of Econ. Sec.*, 107 F.3d at 650 (explaining the RSA "*precludes* the [federal agency's] exercise of its statutory authority when that exercise would limit a blind vendor's operation, unless the Secretary approves the limitation" (emphasis supplied)).

Therefore, we vacate the district court's decision as to those issues, and remand so that the Army may properly comply with the RSA Review Requirement.

IV.

The district court correctly determined that, in foregoing an FFS contract with Kansas in favor of a DFA contract without the Secretary's approval, the Army violated the RSA Review Requirement. We affirm this determination. Because we see no need to decide the other issues presented in this appeal until the Army properly abides by the RSA

30

Review Requirement, we vacate the remainder of the district court's opinion and remand for further proceedings below consistent with this opinion.

*AFFIRMED IN PART, VACATED IN PART, AND REMANDED*